[Sac. No. 5586.   In Bank.   Apr. 7, 1943.]

SUTTER-YUBA INVESTMENT COMPANY ( a Corporation), Petitioner, v. HELEN WASTE, as County Auditor, etc., Respondent.

Rich & Weis for Petitioner.

Thomas C. Boone, A. L. Cowell, Hankins & Hankins, Ronald B. Harris, Harry W. Horton, W. H. Jennings, C. F. Metteer, P. J. Minasian, Maurice M. Myers and Arvin B. Shaw, Jr., as Amici Curiae on behalf of Petitioner.

Earl Warren, Attorney General, Robert W. Kenny, Attorney General, H. H. Linney, Assistant Attorney General, Adrian A. Kragen, Deputy Attorney General, Joseph L. Heenan, District Attorney (Yuba County), and Arthur S. Powell, Deputy District Attorney, for Respondent.

Elmer W. Heald, District Attorney (Imperial), and Lowell L. Sparks, District Attorney (Placer), as Amici Curiae on behalf of Respondent.

TRAYNOR, J.—Assessments levied upon certain real property by Reclamation District No. 784 were not paid, and on June 15, 1932, the property was sold to the Yuba County Treasurer, as trustee for the bond fund of the district. The property was not redeemed within the time allowed by law, and on February 3, 1938, the county treasurer executed and recorded a deed thereof to himself as trustee for the district. The second installment of county taxes for 1937-1938 was then delinquent. County taxes for the years 1938, 1939, and 1940 were erroneously assessed but were subsequently cancelled, leaving only the second installment of the 1937-1938 tax as a lien against the property. The district sold its title to the property, and on October 15, 1940, delivered a deed to the petitioner, who requested respondent to prepare an estimate of the amount necessary to redeem the property from county tax delinquency. The estimate prepared by respondent included an amount representing the taxes that would have been levied during the years the property was owned by the district. Respondent refused to make an estimate representing only the second installment of the tax for 1937-1938 with penalties and interest thereon, and petitioner brought this proceeding in mandamus to compel her to do so.

Petitioner contends that since the county cannot tax the property of a reclamation district (Cal. Const., art. XIII, sec. 1; Rev. & Tax. Code, sec. 4986; *Laguna Beach County Water District* v. *Orange County,* 30 Cal.App.2d 740 [87 P.2d 46]; *Anderson-Cottonwood Irrigation District* v. *Klukkert,* 13 Cal.2d 191 [88 P.2d 685]; *Glenn-Colusa Irrigation District* v. *Ohrt,* 31 Cal.App.2d 619 [88 P.2d 763]) the purchaser of any such property who wishes to redeem

the property for delinquent county taxes levied before the deed to the county treasurer cannot be required to pay as part of the amount necessary to redeem a sum equal to the taxes that would otherwise have been imposed for the years that the property was owned by the district.

The amounts payable on redemption of the property are governed by Political Code section 3817 as it read in 1938 when the property was sold to the state for the nonpayment of the second installment of county taxes for 1937-1938. Under this section the owner of the property, "his heirs, executors, administrators or other successors in interest shall, at any time after the same has been sold to the State and before the State shall have disposed of the same, have the right to redeem such real estate by paying to the county treasurer of the county wherein the real estate may be situated, the amount of taxes, penalties for delinquency, and costs due thereon at the time of such sale, and also taxes that were a lien upon said real property at the time said taxes became delinquent; and also all unpaid taxes of every description which are a lien against the property, for each year since the sale, as shown on the delinquent assessment rolls in the then permanent custody of the county auditor; *or if not so assessed, then upon the value of the property as fixed by the assessor under section 3817m. . . .*" (Italics added.)

"The county auditor shall, on the application of the person desiring to redeem, make an estimate of the amount to be paid, and shall give him triplicate certificates of the amount, specifying the several amounts thereof, . . . " (Stats. 1937, p. 144.)

Section 3817m, referred to in section 3817, provided: "Whenever property is being redeemed or delinquent taxes are being paid in installments on property and it does not appear on the assessment roll, the county auditor shall furnish the county assessor with a list of the years for which no assessment has been made and the assessor shall place a valuation on the property which the auditor shall use in computing the tax for the years when the property was not assessed." (Stats. 1937, p. 150.)

It is thus clearly provided that an amount equivalent to taxes for the unassessed years must be included in an estimate of redemption. Virtually the only property legally unassessed that is subject to redemption is property that has

been deeded to the State or other taxing units for the non-payment of taxes and assessments. Thus, under Political Code section 3813, property that has been sold to the state "shall be assessed each subsequent year for taxes until a deed is made to the state therefor." Nonassessment after deed to the state or other taxing unit results from the tax exemption of government owned property under article XIII, section 1 of the California Constitution. ■ Section 3817 refers to property that is legally unassessed; property that has illegally escaped assessment is governed by Political Code sections 3660-3662, authorizing an action against the assessor and the sureties on his official bonds for an intentional omission of property from the assessment roll, and by Political Code section 3649, providing for the assessment and taxation of property in the year succeeding that in which it escapes assessment.

In the case of property that is delinquent but not deeded to any taxing unit, the auditor ascertains the delinquent taxes, penalties, interest, and costs, and the property may be redeemed upon the payment of these amounts to the county treasurer. If the property has been deeded to the state or other taxing unit and is therefore unassessed, the auditor not only ascertains the amount due on the assessment roll, but computes an amount equivalent to the taxes for the unassessed years upon a valuation of the property by the assessor under Political Code section 3817m. The total of the two amounts is the sum required by section 3817 to redeem the property. This procedure has governed the redemption of property in this state since 1895. (Stats. 1895, p. 22, 333; now embodied in Revenue and Taxation Code, sections 4101-4113.) Its validity was sustained in *Andreson Co.* v. *Los Angeles County,* 55 Cal.App. 585 [203 P.1040], holding that while the property there involved was unassessed by virtue of having been deeded to the State, the redemption charges under Political Code section 3817 included an amount representing taxes that would have been levied upon the property for the years subsequent to the date of the deed. Section 3817 makes no exception for property deeded to a reclamation district. The immunity of such property from taxation does not preclude, any more than the immunity of property deeded to the state, the imposition of such conditions to redemptions as the state deems advisable.

■ The contention that the condition in question violates article XIII, section 1 of the California Constitution, ignores

the distinction between the right of a taxing agency to exemption from taxation on its property and the right of a former owner or his successor in interest to redeem that property from the lien of another taxing agency. The exemption of the taxing unit does not enable the redemptioner to obtain title to the property free from the conditions and for less than the price that the State sets. (*Griggs* v. *Hartzoke,* 13 Cal.App. 429, 434 [109 P. 1104]; *Lachmund* v. *Johnson,* 47 Cal.App.2d 377 [117 P.2d 920].) As this court stated in *Palomares Land Co.* v. *Los Angeles County,* 146 Cal. 530 [80 P. 931], at 533, "the provisions of the law authorizing redemption (Pol. Code, sec. 3817) are to be regarded simply as an offer by the state to release its claims to the land sold upon the terms proposed." There is no constitutional right to redeem property that has been sold to the state for the nonpayment of taxes. "The right of redemption comes entirely from the statute, and is subject to all the limitations and conditions therein imposed." (*Quinn* v. *Kenny,* 47 Cal. 147.)

In the interest of returning tax delinquent property to the tax rolls, the State has enacted liberal provisions for the redemption of such property, so designed as to discourage tax avoidance. If they did not require that redemption take into account the taxes that would be imposed had the property not been deeded to the state, owners would find it advantageous to allow their property to be deeded to the state with the intention of delaying redemption as long as possible to escape the taxes that attend ownership, secure in the knowledge that the state must give them notice before disposing of the property. (Pol. Code, secs. 3833-3834.25.) The right of redemption until the disposal of the property by the state serves the taxpayer's convenience but does not enable him to escape taxes for the period intervening between the deed to the state and redemption while others pay their taxes conscientiously year by year. Likewise he cannot escape such taxes by allowing his property to be deeded to any other taxing unit such as a reclamation district and subsequently regaining the title free of intervening taxes. Section 3817 forestalls any possibility that intermittent ownership would become more advantageous than continuous ownership. At the same time it imposes no burden on the taxing unit, which can obtain the property free of the tax lien by negotiation with the county board of supervisors under the provisions of section 3791 of the Revenue and Taxation Code. (*South San*

*Joaquin Irrigation District* v. *Neumiller,* 2 Cal.2d 485 [42 P.2d 64].)

The petition for writ of mandate is denied.

Curtis, J., Edmonds, J., and Griffin, J., pro tem, concurred.

CARTER, J.—I dissent. The effect of the construction placed upon section 3817 of the Political Code by the majority opinion is to destroy the exemption granted to irrigation and reclamation districts from assessment and taxation of property owned by such districts by section 1 of article XIII of the Constitution of California, and renders such statute unconstitutional.

The facts in the case are simple. Land which was subject to taxation by both Yuba County and Reclamation District No. 784, was sold by the district for delinquent assessments. No redemption having been made from that sale the property was deeded to the district on February 3, 1938, all right of redemption being thereby cut off. When the deed was executed the second installment of 1937-1938 county taxes was a lien upon the property and was delinquent. In 1940, petitioner purchased the property from the district. During the years 1938, 1939 and 1940, while the district was the owner of the property, county taxes *were assessed* against the property, but before petitioner's purchase of the property said taxes were cancelled by the board of supervisors because the property was not subject to taxation by the county while owned by the district, a state agency. (Cal. Const., art. XIII, sec. 1; *Anderson-Cottonwood Irr. Dist.* v. *Klukkert,* 13 Cal. 2d 191 [88 P.2d 685].) The majority opinion holds that in order for petitioner to redeem the property from the delinquent county taxes which were due prior to the time the district became the owner of the property, it must pay *not only* those delinquent taxes, but also all taxes which might be said to have accrued *during the time the district was the owner.* That conclusion is based upon an interpretation of section 3817 of the Political Code dealing with redemption. Said section provides that property may be redeemed from county taxes by payment of taxes due when sold to the state "and also all taxes that were a lien upon said . . . property at the time said taxes became delinquent; and also all unpaid taxes of every description which are a lien against the property, *for each year since the sale, as shown on the delinquent assessment rolls in the then permanent custody of the county*

*auditor; or, if not so assessed, then upon the value of the property as fixed by the assessor* under section 3817m. . . .''
In my opinion that provision is not reasonably susceptible of the interpretation given it by the majority opinion for several reasons.

The taxes for the years the district was the owner of the property were not a lien upon it because, although assessed, they were *cancelled* by the board of supervisors. They are not the taxes to be computed on the value to be fixed by the assessor under the last sentence of the code provision because that sentence is operative only *if the property was not assessed.* In the instant case it *was assessed* and a tax levied thereon which became delinquent on the assessment rolls, but was later cancelled. This view is further made clear by section 3817m of the Political Code which states that the assessor shall fix the valuation upon which the tax shall be computed when property is being redeemed *only if the property does not appear on the assessment roll and no assessment has been made.* Hence, there is no requirement in section 3817 that the taxes which would have accrued while the district was the owner, but which did not accrue because of its ownership, must be paid by a redemptioner who is a purchaser from the district.

The amounts that must be paid by a redemptioner under section 3817 are taxes, not penalties or the like. They are so referred to in that section. In section 3817m the computation when no assessment has been made is of the ''*tax* for the years when the property was *not assessed.*'' Section 3813 providing for the continuation of assessments after a deed to the state calls for the assessment of *taxes.* Therefore, the amounts payable under section 3817 are *taxes.* As no *taxes* could be assessed while the district was the owner, no taxes may be collected from the purchaser who purchased the property from the district.

The whole purpose of the constitutional exemption from taxation of state owned property will be thwarted if the construction placed upon section 3817 by the majority opinion prevails. The district never will be able to dispose of property acquired by it for delinquent assessments. It is obvious that the district does not desire to retain such property, its main concern being to put it back on the assessment rolls. If a purchaser from the district must pay county taxes for the period the district held it, it is doubtful if a purchaser will be found, and the benefits flowing to the district from the

exemption will be wholly lost. The same situation would exist if property acquired by a veteran and thereafter claimed to be exempt from taxation while owned by him (Constitution, article XIII, section 1¼), were sold subject to a delinquent tax installment which accrued before he acquired title. Should the purchaser attempt to redeem the property from the delinquency, he would be forced to pay taxes which would have accrued while the title stood in the veteran's name, but which were not paid because of his constitutional exemption. Likewise, should a person convey property to the state or to one of its agencies for some specific public use upon condition that it would revert to him if and when the public ceased using it for such purpose, and it thereafter reverted to him and it became necessary for him to redeem such property from a tax delinquency which accrued prior to the conveyance to the public agency, he would be required to pay all taxes which might have accrued had the property remained in private ownership while it was owned and used by the public, notwithstanding the fact that said property was exempt from assessment or taxation and was not assessed during the time that it was owned and used by the public agency.

It is obvious that the reclamation district could have paid the second installment of 1937-1938 county taxes or redeemed the property from the delinquent tax sale which resulted from the failure to pay such installment, and in such event the purchaser from the district would not have been required to redeem. It must be conceded that had this procedure been followed neither the district nor the purchaser would have had to pay any taxes on this property while title thereto was held by the district as no redemption would have been required, and the property could not be assessed until title vested in the purchaser from the district.

It seems highly improbable that the Legislature intended that section 3817 of the Political Code should be construed as requiring the payment of taxes on property during the time that it is expressly declared by the Constitution to be exempt from taxation in order to redeem such property from a delinquent tax sale based upon an installment of taxes which had accrued prior to the time the property became exempt from taxation. It is well settled that in construing a statute the court must look at the context, and the result that would follow in order to arrive at the legislative intent. (*Stockton School District* v. *Wright*, 134 Cal. 64 [66 P. 34] ; *Marshall* v. *Foote*, 81 Cal.App. 98 [252 P. 1075].)

In the case of *People* v. *Davenport,* 13 Cal.2d 681 [91 P.2d 892], this court held that the words of a statute will not be given their literal meaning when to do so would carry its operation far beyond legislative intent and thereby make it apply to transactions not contemplated by the Legislature.

As stated by Chief Justice Stone of the Supreme Court of the United States in *United States* v. *Katz,* 271 U.S. 354, 357 [46 S.Ct. 513, 70 L.Ed. 986]:

"All laws are to be given a sensible construction; and a literal application of a statute, which would lead to absurd consequences, should be avoided whenever a reasonable application can be given to it, consistent with the legislative purpose." In making this statement the Chief Justice was not announcing an unorthodox or unconventional doctrine. In *American Tobacco Co.* v. *Werckmeister,* 207 U.S. 284, 293 [28 S.Ct. 72, 52 L.Ed. 208], Mr. Justice Day said:

"But in construing a statute we are not always confined to a literal reading, and may consider its object and purpose, the things with which it is dealing, and the condition of affairs which led to its enactment so as to effectuate rather than destroy the spirit and force of the law which the Legislature intended to enact.

"It is true, and the plaintiff in error cites authorities to the proposition, that where the words of an act are clear and unambiguous they will control. But while seeking to gain the legislative intent primarily from the language used we must remember the objects and purposes sought to be attained."

This court has repeatedly held that statutes are to be interpreted in the light of reason and common sense and should not be given a construction which will lead to absurd consequences. (*Great Western Distillery Products, Inc.* v. *John A. Wathen Distillery Co.,* 10 Cal.2d 442 [74 P.2d 745]; *People* v. *Mulholland,* 16 Cal.2d 62 [104 P.2d 1045]; *People* v. *Ventura Refining Co.,* 204 Cal. 286 [268 P. 347, 283 P. 60]; *Uhl* v. *Badaracco,* 199 Cal. 270 [248 P. 917]; *Robbiano* v. *Bovet,* 218 Cal. 589 [24 P.2d 466]; 23 Cal.Jur. 735.)

So, may it not be said that in the case at bar we should look beyond the literal terms of the statute to the purpose and object of the Legislature in enacting section 3817 of the Political Code? It is obvious that the Legislature did not intend directly or indirectly to destroy a constitutional exemption against assessment and taxation of property held by public agencies. A statute should never be so construed as to nullify

a constitutional provision. (*Rose* v. *State of California,* 19 Cal.2d 713 [123 P.2d 505].) What it intended was to require a redemptioner to pay taxes on property redeemed where the taxes were not assessed because title was vested in the state as the result of a sale to the state for delinquent taxes. Such property is not in a strict sense exempt from taxation, but its assessment for the purpose of taxation is suspended during the time that title is held by the state as the repository of titles derived from delinquent tax sales.

In my opinion, the exemption provided for in the Constitution is of a permanent nature and if property is once exempted and no taxes are assessed against it because of such exemption, it cannot thereafter be assessed for the same period it was declared to be exempt by the Constitution. Therefore, if the property in question was exempt from taxation while the title thereto was vested in the reclamation district, it did not become subject to taxation during that period after title thereto was acquired by petitioner, and petitioner is therefore entitled to the writ prayed for.

Shenk, J., concurred.

Petitioner's application for a rehearing was denied May 6, 1943. Shenk, J., Carter, J., and Schauer, J., voted for a rehearing.