[Civ. No. 7408.   Third Dist.   Feb. 9, 1948.]

MERCHANTS FINANCE CORPORATION (a Corporation), Appellant, v. THOMAS H. KUCHEL, as State Controller, etc., Defendant and Respondent; COUNTY OF SAN LUIS OBISPO, Intervener and Respondent.

John D. Den-Dulk and Eugene K. Sturgis for Appellant.

Fred N. Howser, Attorney General, Edward G. Benard, Deputy Attorney General, Herbert C. Grundell, District Attorney, and L. E. Somogyi, Deputy District Attorney, for Respondents.

THOMPSON, J.—This is an appeal from a judgment rendered pursuant to an order sustaining a demurrer to the complaint without leave to amend the pleading. The suit is for a mandatory injunction to require the State Controller to retain and apply $28,000, collected from the United States government as damages for injury to the buildings and improvements on the land formerly belonging to plaintiff in a "Distressed Assessment District," in San Luis Obispo County. It is claimed the state holds this sum in trust for the owners of the property, to be applied only to restoring the buildings and improvements to the condition existing at the time of a lease which was executed to the government. Prior to the lease the property was deeded to the state on sale for delinquent taxes. More than five years have elapsed since the state acquired title to the land. The time for redemption was extended by statute. Plaintiff has not redeemed the property. No notice terminating the right to redeem has been served.

The complaint alleges that plaintiff owns 351 acres of land in a "Distressed Assessment District" under section 133 of the Revenue and Taxation Code, in San Luis Obispo County, upon which there were valuable buildings and improvements; that "long prior to the 1st day of June, 1942," the property was sold and deeded to the state for delinquent taxes; that on the last-mentioned date the State Controller leased the property, under the provisions of division 1, part 6, of the Revenue and Taxation Code, to the United States government, which lease is attached to the complaint and marked

"Exhibit A"; that said lease was terminated July 31, 1946; that during the government's tenure the improvements "were substantially destroyed"; that a survey and appraisement of the damages sustained were made; that by agreement between the lessor and the lessee compensation for said damages, in the sum of $28,000 was paid by the government to the State Controller, pursuant to section 3655 of said code, on August 13, 1946, and placed in the "Tax-Deeded Land Rental Trust Fund" in the state treasury, a portion of which sum the controller threatens to remit to the county treasurer of San Luis Obispo County pursuant to section 3659 of said code, unless restrained from so doing. The complaint prays for a mandatory injunction to prevent payment of said damages to the county treasurer, and to require the State Controller to expend said money only for repairing and restoring the buildings and improvements to the condition they were in at the time of the lease. A temporary restraining order was made. By leave of court, the county of San Luis Obispo filed a complaint in intervention in said cause, together with a demurrer to said complaint. At the same time the State Controller also filed a demurrer to said complaint of plaintiff. The defendant's demurrer was sustained without leave to amend the pleading.

There is no doubt that the policy of the law is to use the revenues of the Redemption Tax Fund for "the *primary* purpose of restoring tax-deeded property to the rolls and for *all other purposes incident to the administration and classification of tax-deeded property.*" (Rev. & Tax. Code, § 3661.) But that may not be construed to mean that the particular funds derived by the state from rents, issues or profits, while the title is vested in the state, shall be deemed to be a trust fund for the exclusive benefit of the former owner. The rights of the former owner, after the property had been deeded to the state, are purely statutory. (*Sutter-Yuba Investment Co.* v. *Waste,* 21 Cal.2d 781, 785 [136 P.2d 11]; *Lachmund* v. *Johnson,* 47 Cal.App.2d 377 [117 P.2d 920].)

There is a conflict of authorities in other jurisdictions regarding the nature of the title which is acquired by the deed to the state for delinquent taxes. Some authorities hold that the state thereby acquires only an inchoate title, which may subsequently become absolute by failure of the owner to redeem the property as provided by statute. (147

A.L.R. 1123, note.) But, in California, a different rule now prevails. It is now definitely determined in this state that upon execution of the deed to the state for delinquent taxes, the property owner forfeits all rights in the property except the privilege of redeeming it at any time before the state disposes of it. (*Mercury Herald Co.* v. *Moore,* 22 Cal.2d 269, 273 [138 P.2d 673, 147 A.L.R. 1111]; *People* v. *Maxfield,* 30 Cal.2d 485 [183 P.2d 897].) Of course the deed to the state, while it conveys to the state the *absolute title* to the property, is subject to certain specified prior liens and encumbrances which are not destroyed by the deed. (Rev. & Tax. Code, § 3520; *Conley* v. *Hawley,* 2 Cal.2d 23 [38 P.2d 408].) In the Mercury Herald Co. case, *supra,* it is said:

"It is also contended that the right to redeem after the property has been deeded to the state but before it has been sold by the state is a property right, and that the legislation in question deprives the property owner of that right without due process of law. This contention takes no account of the distinction between the absolute right to redeem within the fixed period of five years from the date of sale to the state, and the conditional right to redeem once the property has been deeded to the state if the state does not sell the property. The deed to the state upon the expiration of the five-year period conveyed *absolute title to the property free of any incumbrance except liens for certain taxes.* (Pol. Code, sec. 3787; Rev. & Tax. Code, sec. 3520.) Upon execution of the deed the property owner forfeited all rights in the property except the privilege of redeeming it at any time before the state disposed of it. (Citing authorities.)" (Italics added.)

In the Maxfield case, *supra,* a complaint was filed by the state to recover from the owner, after his redemption of the property, rents, issues and profits accruing while the state held title to the property, but which were collected and appropriated by the owner after redemption. Like the present case, a demurrer to the complaint was sustained without leave to amend the pleading. In that case the Supreme Court quoted section 3651 of the Revenue and Taxation Code, which reads:

"After the recording of the deed to the State, the State has exclusive power through the Controller to rent tax-deeded property and to receive all proceeds arising *in any manner from the property* except proceeds from a transaction termi-

nating the right of redemption, if the right of redemption has not been terminated, or from a sale of a parcel of tax-deeded property.''

It will be observed that the foregoing statute provides that the controller has exclusive power to receive, not only the rent derived from leased property, to which the state has title, but also ''all proceeds arising in any manner from the property.'' We think that language covers damages received by the controller from injury sustained to buildings and improvements by the careless or wrongful acts of the lessee.

The court further states in the Maxwell decision that:

''The deed to the state, executed pursuant to the statutory requirements, conveys absolute title, free of all encumbrances, except certain specified liens. (Rev. & Tax. Code, § 3520.) It is not the same title as that of a private purchaser, because the purpose of the conveyance is not the acquisition of the property but the collection of the taxes. (*Anglo Cal. Nat. Bank* v. *Leland,* 9 Cal.2d 347, 353 [70 P.2d 937].) However, the only difference between the state's title and that of a private purchaser is the privilege of redemption. 'Upon execution of the deed [to the State] the property owner forfeited all rights in the property except the privilege of redeeming it at any time before the state disposed of it.' (*Mercury Herald Co.* v. *Moore,* 22 Cal.2d 269, 273 [138 P.2d 673, 147 A.L.R. 1111].) *The state's title is absolute, but subject to defeasance should the former owner exercise his privilege of redemption. . . .*'' (Italics added.)

It is not necessary to discuss the cases cited by the appellant in support of its contention that the deed to the state conveyed to it only an inchoate title, leaving the equitable title in the owner until the property was finally sold by the state for the taxes. The language of some earlier cases may leave that impression. But it seems clear from the latest decisions of our Supreme Court, that situation exists only after the original sale for taxes and before the deed to the state has been executed. (24 Cal.Jur. § 308, p. 332.) That is evidently what the court meant by the quotation in appellant's opening brief from the Mercury Herald Company case, *supra.* At least, the preceding cases from which we have quoted now leave no doubt that after the deed to the state has been executed, title in the state becomes absolute, subject to prior existing liens, to be defeated only by redemption.

The State Controller was authorized to rent the land to the United States government. (Rev. & Tax. Code, § 3651.) A lease from year to year was executed June 1, 1942, for the annual rental of $937.50. The lease was terminated by consent July 31, 1946. August 13, 1946, by agreement, the controller was paid $28,000 "as damages to said improvements," under section 3441 of that code. Pursuant to section 3659 said amount of damages was placed by the controller in the "Tax-Deeded Land Rental Trust Fund," to be apportioned and distributed to the proper taxing agency or agencies in accordance with the three succeeding sections of that code. Plaintiff's right of redemption has not been exercised. ■ Since the property is located in a distressed assessment district, as defined in section 133 of the same code, the authority to terminate the right of redemption was prohibited until "after January, 1947." (§ 3571.3.) That authority to terminate the right of redemption was further extended in 1945 until the 91st day after the final adjournment of the 57th Regular Session of the Legislature, which was September 19, 1947. (Stats. 1945, p. 699, ch. 700.) But in 1947, sections 3495, 3511.3, 3511.4, 3511.5, and sections 3571 to 3578, inclusive, relating to the extension of the right to redeem, and the method of effecting the same, were repealed. (Stats. 1947, p. 1616, ch. 606.) The repeal of those sections leaves in effect sections 3494 and 3707 of that code. Section 3494 authorizes sale of the property by the state in a "Distressed Assessment District" pursuant to chapter 8, with the written approval of the county tax collector. (*Federated Income Properties, Inc.* v. *State of California,* 82 Cal.App.2d 893 [187 P.2d 460].) Section 3707 provides that, "If not previously terminated, on completion of any sale under this chapter the right of redemption is terminated." We conclude that the State Controller is now authorized to sell the property, with the written approval of the county tax collector of San Luis Obispo, and that, upon the termination of that sale, the right of redemption will automatically become final. We assume that until the property has been sold by the state in the manner provided by statute, the plaintiff would have a right to redeem it. It has not done so.

■ After a deed to tax-delinquent property has been conveyed to the state, the absolute title thereto remains in the state, as we have previously stated, subject only to such

rights as would follow the former owner's redemption of the property. Certainly the owner may not claim rents, issues, profits or damages which have accrued while the state holds title to the land, until he has first redeemed the property. As the Maxfield case, *supra,* clearly holds, the state is entitled to the rents, issues and profits derived from the tax-deeded property, while it holds title thereto, and an accounting therefor may be enforced against the owner, after his redemption of the property, for such funds collected and retained by him. We think the same rule applies to damages collected by the State Controller for injury to buildings or improvements while the state holds title.

There appears to be merit in appellant's contention that the owner is entitled to have the property restored with the buildings and improvements in substantially the same condition existing at the time of the lease, if and when he redeems the property. But that question is not involved in this case since the appellant has failed to redeem the property. We therefore refrain from determining that question.

The appellant asserts that the reason it has not redeemed the property is that it is "impossible for the plaintiff at this time to pay the tax," because the property is situated in a distressed assessment district, and that all parcels within that district are burdened with a bonded indebtedness under section 41 of the Acquisition and Improvement Act of 1925, which is referred to as the "Mattoon Act." (Stats. 1925, p. 849, ch. 419, at p. 890; Deering's Gen. Laws, 1933 Supp., Act 3276a.) But, since the owner forfeited his title for non-payment of taxes, and the title was therefore conveyed to the state, if there is a remedy to require buildings and improvements to be restored to the condition existing at the time of the lease, that right does not accrue until after redemption of the property. We have no assurance that appellant can or will ever redeem the property. The State Controller *may* authorize "repairs necessary to preserve improvements on the property," (Rev. & Tax. Code, § 3655) but that is not mandatory. It is apparent that the restoring of damaged buildings would not inure to the benefit of the owner if he fails to redeem the property.

The complaint fails to state a cause of action. The order sustaining the demurrer to the complaint was properly sustained. The judgment is affirmed.

Adams, P. J., and Peek, J., concurred.