[Sac. No. 7097. In Bank. Mar. 23, 1961.]

THE PEOPLE, Respondent, v. ORVAL LUCAS et al., Appellants.

Bronson, Bronson & McKinnon, Harold B. McKinnon and Falk & Falk for Appellants.

Stanley Mosk, Attorney General, James E. Sabine and Dan Kaufmann, Assistant Attorneys General, and Edward P. Hollingshead, Deputy Attorney General, for Respondent.

William R. MacDougall as Amicus Curiae on behalf of Respondent.

TRAYNOR, J.—On June 3, 1948, land owned by Bruce L. and Virginia B. Codding was deeded to the state for delinquent taxes for the year 1942-1943. On August 10, 1953, while the land was still deeded to the state, the Coddings agreed to sell to Orval Lucas and Elwood Woodburn all the merchantable timber on the land and warranted that there were 2,000,000 feet of fir and pine. The buyers cut and removed 812,851 feet of timber, the contract price for which was $6,502.80. They ceased cutting when the State Controller notified them that the land had been deeded to the state.

On March 30, 1955, plaintiff filed this action under sections 3441[1] and 3651[2] of the Revenue and Taxation Code to recover the $6,502.80 for the timber removed from the land. More than a year later, on June 22, 1956, the Coddings redeemed the property by paying all delinquent taxes, penalties, and interest totalling $4,194.21. The trial court found that the cutting and removal of the timber tended permanently to impair the value of the property in violation of section 3441

---

[1]Section 3441 provides: "Every person who does any act tending permanently to impair the value of tax sold property or tax-deeded property is guilty of a misdemeanor and is liable for any damages sustained by the State because of his act. Such acts include but are not limited to the removal, destruction, or cutting of any improvements or timber. On request of the Attorney General or the Controller, the district attorney of the county where any part of the property is located shall: (a) Prosecute for the commission of the misdemeanor. (b) In the name of the people, sue for damages sustained by the State."

[2]Section 3651 provides: "After the recording of the deed to the State, the State has exclusive power through the Controller to rent tax-deeded property and to receive all proceeds arising in any manner from the property except proceeds from a transaction terminating the right of redemption, if the right of redemption has not been terminated, or from a sale of a parcel of tax-deeded property."

of the Revenue and Taxation Code and entered judgment for plaintiff in the amount of $6,502.80. Defendants appeal.

Defendants contend that they cannot be required to account for the proceeds from the sale of the timber on the grounds that the amount they paid to redeem the property included taxes on the value added to the land by the timber before it was removed and that by paying a redemption price based on the value of the land including the timber they have in effect already paid the state for the timber. There is no merit in this contention.

The amount necessary to redeem is specified in section 4102 of the Revenue and Taxation Code as the sum of the "sold taxes," delinquent penalties and costs, and redemption penalties. The amount of "sold taxes" is a combination of taxes that were a lien on the property when sold to the state and the taxes assessed for each subsequent year as shown on the delinquent rolls or that would have been shown had the property been assessed in cases where it was not assessed for any year. (Rev. & Tax. Code, § 123; *Sutter-Yuba Invest. Co.* v. *Waste,* 21 Cal.2d 781, 784 [136 P.2d 11].) The assessments for these taxes must take into account any reduction in value in the years following removal of timber from the land. (Rev. & Tax. Code, §§ 123, 401, 405, 406, 566, 4104.) Thus, the fact that defendants have paid the back taxes on the property does not mean that they have paid taxes on removed timber. In any event taxes are exactions for the support of government, not the purchase price of property. By paying the taxes upon redemption defendants were paying the amount due for that support and were not buying land and timber. Even if redemption could be regarded as a purchase, however, it would be a purchase of the land in the condition it was in at the time of the redemption, and the state would be no less entitled to the proceeds from the property during its ownership than it would had the property been sold at public auction.

 The deed to the state conveys absolute title to the property. (*Mercury Herald Co.* v. *Moore,* 22 Cal.2d 269, 273 [138 P.2d 673, 147 A.L.R. 1111].) The state can occupy such property and exploit its natural resources and has the exclusive right to all proceeds from the property including proceeds from such resources. (Rev. & Tax. Code, §§ 3441, 3651, *supra.*) It can improve the property or allow it to deteriorate in value. The statutory provisions authorizing redemption are simply an offer by the state to reconvey

the property on the terms prescribed if it has not already been sold at public auction. (*Sutter-Yuba Invest. Co.* v. *Waste,* 21 Cal.2d 781, 785 [136 P.2d 11].) ██ There is nothing in the statutes that could reasonably be construed as implying that on redemption the redemptioner is entitled to the property in the condition it was in at the time of the tax deed. In fact such construction is precluded by the express statutory rights given the state and the forfeiture of all rights by the former owner except the privilege of redeeming on the terms prescribed if the state has not already disposed of the property. (*Mercury Herald Co.* v. *Moore,* 22 Cal.2d, *supra.*)

Defendants' contention that the redemption extinguished plaintiff's cause of action would revive an issue settled adversely to them in *People* v. *Maxfield,* 30 Cal.2d 485 [183 P.2d 897]. ██ In upholding in that case the state's right to recover rents collected by the taxpayer on tax-deeded land between the time of the tax deed and the redemption this court declared:

''The deed to the state, executed pursuant to the statutory requirements, conveys absolute title, free of all encumbrances, except certain specified liens. (Rev. & Tax. Code, § 3520.) It is not the same title as that of a private purchaser, because the purpose of the conveyance is not the acquisition of the property but the collection of the taxes. (*Anglo Cal. Nat. Bank* v. *Leland,* 9 Cal.2d 347, 353 [70 P.2d 937].) However, the only difference between the state's title and that of a private purchaser is the privilege of redemption. 'Upon execution of the deed [to the State] the property owner forfeited all rights in the property except the privilege of redeeming it at any time before the state disposed of it.' (*Mercury Herald Co.* v. *Moore,* 22 Cal.2d 269, 273 [138 P.2d 673, 147 A.L.R. 1111].) The state's title is absolute, but subject to defeasance should the former owner exercise his privilege of redemption. The tax collector's receipt, authorized by section 4107 of the Revenue and Taxation Code, which is recorded 'like a deed,' is a reconveyance of an absolute title owned by the state and issues upon the performance of all conditions necessary for redemption.

██ ''Rights incident to ownership of property conveyed to the state are expressly provided for by the Revenue and Taxation Code. These include the right to possession (§ 3653); the right to rent or lease and receive the proceeds from the property (§§ 3651 and 3655); the right to exact an accounting

of the proceeds of the property (§ 3652) ; the right to bring an action of unlawful detainer or ejectment (§ 3654) ; and the right to sell the property at public auction to the highest bidder (§ 3476). These rights are no more limited than those of an individual who has title to real property. They cease upon the transfer of title but certain rights, such as that to rents and profits which accrued during the period of ownership, are personal and do not pass with the deed nor cease to be actionable upon the conveyance of the property. [■■ Under section 4112 of the Revenue and Taxation Code the tax deed is not void from the beginning but only upon redemption ; the state's interest in the land then ceases because title has passed to the redemptioner. At that time the right to possession of the land, and to lease or rent and receive the proceeds, is at an end. So also is the right to sell the property at public auction. ■ But a right of action which accrued during the period of ownership is not terminated by the redemption ; the state is in the same position as that of an individual who conveys land to which he has title.'' (30 Cal.2d at pp. 487-488.)

What we said in the Maxfield case is controlling here. Both cases involve the state's right ''to receive all proceeds arising in any manner'' from tax-deeded property. (Rev. & Tax. Code, § 3651.) In the Maxfield case the proceeds arose from rent ; here they arose from the sale of timber. (See also *Merchants Finance Corp.* v. *Kuchel*, 83 Cal.App.2d 579, 583 [189 P.2d 513] where the proceeds the state had the exclusive power to receive arose from the payment of damages by the state's lessee for injury to buildings.) ■ The phrase ''arising in any manner'' in section 3651 precludes the drawing of any distinction according to the manner in which the proceeds arise. ■ Moreover, the making of any exception for proceeds from the sale of timber is also foreclosed by section 3441 of the Revenue and Taxation Code, which makes it a misdemeanor to do any act tending permanently to impair the value of tax-deeded property, including the cutting or removal of timber, and expressly provides for the recovery of damages by the state for such cutting or removal. ■ The making of any exception for a redemptioner is foreclosed by section 3441, which refers to ''every person'' and therefore includes a redemptioner as well as a stranger to the title. ■ Thus in neither section 3441, section 3651, the sections governing redemption (Rev. & Tax. Code, §§ 4101-4114) nor in any other statute

is there any provision that makes the state's right to recover the proceeds arising from the tax-deeded property depend on whether there has been a redemption of the property.

Moreover, the state unquestionably suffered damages during the period it owned the property. A person having an estate in fee or in remainder or a reversion may maintain an action for an injury to the inheritance even though after its commission his estate is transferred and he has no interest in the property at the commencement of the action. (Civ. Code, § 826.)

To permit defendants to retain the proceeds from the sale of the timber would be to condone a brazen trespass to property that section 3441 makes a crime and would encourage the stripping of timber and the removal of minerals from tax-deeded lands. It would also encourage tax delinquency, for it would permit the former owner to speculate as to whether the proceeds from the property would be sufficient to justify his redeeming it and would permit him to collect such proceeds until the state took steps to compel an accounting and payment and then defeat the rights of the state by redeeming the property before judgment could be obtained. As the Maxfield case makes clear, the statutes are plainly drawn to preclude such maneuvers.

The judgment is affirmed.

Gibson, C. J., Peters, J., White, J., and Dooling, J., concurred.

SCHAUER, J., Dissenting.—Plaintiff concedes that "unsevered trees . . . would pass with the land to the redemptioner," of tax-deeded land. I believe that the better view, and one which accords more with a sense of fairness to the taxpayer and property owner who redeems, and with the declared policy of the state, is that since the trees are part of the realty on which the taxes were originally assessed and on which the interest and penalties paid by the redemptioner accrued, the proceeds of the cut timber should belong to the owner who redeemed. Such proceeds plainly differ in nature from rentals collected for *use* of the land, which were held to belong to the state in the Maxfield case. (*People* v. *Maxfield* (1947), 30 Cal.2d 485, 487-488 [1-4] [183 P.2d 897].) Moreover, as reiterated in that case (p. 487 [1]), "the purpose of the [tax] conveyance is not the acquisition of the property but the collection of the taxes."

In *Merchants Finance Corp.* v. *Kuchel* (1948), 83 Cal. App.2d 579, 585 [189 P.2d 513], although it was held that an owner of tax-deeded property who has *not* redeemed it may not by mandamus require the State Controller "to retain and apply" to restoration of the property moneys collected by the state from a tenant as damages to the buildings and improvements on the land, the court remarked that "There appears to be merit in appellant's contention that the owner is entitled to have the property restored . . . in substantially the same condition . . . if and when he redeems the property. But that question is not involved in this case since the appellant has failed to redeem. . . ." Further, in *People* v. *Gustafson* (1942), 53 Cal.App.2d 230, 234 [2] [127 P.2d 627], it was pointed out that "it is the settled policy of the law to give a delinquent taxpayer every reasonable opportunity compatible with the rights of the state, to redeem his property, and to make his burden as light as possible [citations] ; and the return to the tax rolls of the property which has been sold for taxes in order that it may again support general governmental functions is in the public interest. [Citation.]"

Certainly nothing in section 3441 of the Revenue and Taxation Code precludes retention by the owner of the timber proceeds in this case. The owner has redeemed ; *ergo,* no damages by reason of the timber cutting may rightfully be claimed by the state. I would reverse the judgment.

McComb, J., concurred.