[Civ. No. 29600. Second Dist., Div. Five. May 23, 1967.]

H. POTTER, Plaintiff and Appellant, v. COUNTY OF LOS ANGELES, Defendant and Respondent.

Max Tendler for Plaintiff and Appellant.

Harold W. Kennedy, County Counsel, and William F. Stewart, Deputy County Counsel, for Defendant and Respondent.

STEPHENS, J.—Plaintiff Potter filed an action against defendant County of Los Angeles (sometimes hereinafter referred to as County) "To Quiet Title Under Section 738, C.C.P., and For Declaratory Relief Judgment and Injunction." Plaintiff Potter's appeal followed from a judgment in favor of the defendant County.

The case was submitted upon a stipulation of facts. They are:

"During the period November 29, 1940, through January 20, 1941, Mary Bowen received medical attention and hospital care in the Los Angeles County General Hospital, and the reasonable charge for said services was $259.34. On December 4, 1940, Mary Bowen signed a Plan of Payment Agreement with the County of Los Angeles, in which she promised to reimburse said County for the medical care rendered during the aforesaid period in monthly installments of $15.00, until the entire sum of $259.34 was paid. On November 29, 1940, Roy C. Bowen executed a Reimbursement Agreement in which he promised to reimburse the County for the medical services rendered to his mother in the amount of $259.34. On February 5, 1942, title to the property described on Page 2, lines 6 through 14, of plaintiff's complaint was vested in Mary Bowen as the holder of a life estate, and in Roy C. Bowen, Gertrude Bowen, and Dorothy F. Traynor, joint tenants as to the remainder. Roy C. Bowen and Dorothy F. Traynor were the son and daughter of Mary C. Bowen, and at that time were legally obligated to reimburse the County of Los Angeles as responsible relatives under the Welfare and Institutions Code for medical care rendered their mother.

"On February 5, 1941, Roy C. Bowen, Gertrude Bowen, and Dorothy F. Traynor executed a promissory note in which

they promised to reimburse the County of Los Angeles for the sum of $259.34 already expended in medical care rendered Mary Bowen and also promised to reimburse the County for any medical care thereafter rendered Mary Bowen. On the same date, Roy C. Bowen, Gertrude Bowen and Dorothy F. Traynor executed a mortgage to the County of Los Angeles on the aforesaid property, said mortgage securing the aforesaid promissory note. All statutes of limitation on the promissory note and the mortgage were forever waived. The promissory note and the mortgage securing said note were legally enforceable obligations of Roy C. Bowen, Gertrude Bowen, and Dorothy F. Traynor, and constituted a valid encumbrance on the property when executed and delivered to the County of Los Angeles. The mortgage was recorded March 17, 1941, in the office of the Los Angeles County Recorder.

"During the period January 20, 1941, through August 7, 1941, the County of Los Angeles rendered additional medical care and hospital attention to Mary Bowen, the reasonable charge for said services being $340.98. The sum total of the charges for all medical care and hospital attention rendered Mary Bowen by the County of Los Angeles is and was $600.32, and that sum is due and owing from Roy C. Bowen, Gertrude Bowen, and Dorothy F. Traynor to the County of Los Angeles. Mary Bowen died on or about February 5, 1942.

"On June 27, 1961, a statement of amounts owing the County of Los Angeles by Mary Bowen and Roy C. Bowen, Gertrude Bowen and Dorothy F. Traynor was mailed to Betty Brace, niece of Mary Bowen, pursuant to the request of Betty Brace.

"On June 30, 1955, the real property described on Page 2, lines 6 through 14, of plaintiff's complaint and upon which the County of Los Angeles holds a mortgage was sold to the State of California by reason of non-payment of real estate taxes for the year 1954-55. That from June 30, 1955, through June 30, 1960, none of the assessments for real estate taxes imposed upon said real property were paid at any time by anyone. On July 1, 1960, the aforesaid real property was deeded to the State of California by conveyance of real estate, executed by H. L. Byram, Tax Collector of the County of Los Angeles, and said conveyance was recorded with the County Recorder of Los Angeles County on August 3, 1960.

"During the time that said real property was sold to the State of California in 1955 for non-payment of taxes and up

to the present time, the property was occupied by tenants, who paid no rent to anyone from said date until September 1960. Between September 1960 and January 1962, the tenants on the aforesaid real property paid rent to the State of California. In January of 1962 the plaintiff, H. Potter, did notify the tenants, who were then residing on said property that he claimed the property as his, and that they were to no longer make their rental payments to the State of California, but were thereafter to make their rental payments to him. The tenants, from that time forward, made their rental payments to H. Potter and still continue to do so. At no time prior to January, 1962, when H. Potter notified the present tenants to pay rent to him was the plaintiff, H. Potter, in possession of the aforesaid real estate, nor did he acquire by conveyance from the former owners of record legal title, right or interest in said property prior to said. date. On February 26, 1962, H. Potter paid all delinquent taxes on said property to date and thereupon the Tax Collector issued to the plaintiff, H. Potter, a Certificate of Redemption of Real Estate (Exhibit 'C') deeded to the state.

''On March 27, 1962, a title search was ordered by the Bureau of Resources and Collections for the County of Los Angeles, and the report indicated that title was vested in the names of Roy C. Bowen, Gertrude Bowen, and Dorothy F. Traynor. In July, 1962. the Bureau of Resources and Collections again requested the County Engineer to submit an Abstract of Title. On July 11, 1962, the Abstract of Title from the Engineer of the County of Los Angeles reported that as of June 28, 1962, title to the aforesaid property was vested in Roy C. Bowen, Gertrude Bowen, and Dorothy F. Traynor, and that the only encumbrance outside of the current tax lien on said property as of that date was a mortgage executed by Roy C. Bowen, Gertrude Bowen, and Dorothy F. Traynor to the County of Los Angeles, dated February 5, 1941, and recorded March 17, 1941. On April 20, 1962, a statement of amounts owing and a demand for payment was sent to Dorothy F. Traynor.

''On May 25, 1962, the Bureau of Resources and Collections first actually became aware that H. Potter, plaintiff herein, had paid all past delinquent taxes on said property, and was in possession of a Certificate of Redemption issued by the Los Angeles County Tax Collector. On June 6, 1962, a demand for payment of the amounts due under the promissory note, secured by the aforesaid mortgage, was made on H.

Potter. No sum has ever been paid by H. Potter or anyone on the aforesaid indebtedness.

"On February 18, 1963, the Bureau of Resources and Collections was authorized by the Board of Supervisors to foreclose on the power of sale contained in the aforesaid mortgage and a notice of default and foreclosure was filed on March 19, 1963. On July 9, 1963, notice of sale under the power of sale and mortgage was given to all owners of record and said sale was set for August 31, 1963.

"The County of Los Angeles, as mortgagee, did not attempt at any time whatsoever up to February 18, 1963, to exercise any of the rights reserved to it under the express terms of the mortgage, Exhibit 'B' attached to the complaint, to enforce payment of the obligation owed the County and secured by said mortgage.

"The plaintiff's claim of title and right to possession of the property involved in this action is not based on five years continuous adverse possession, nor does it emanate by conveyance or grant from the former owners who executed the aforesaid mortgage.

"All exhibits attached to plaintiff's complaint and incorporated by reference therein are true and accurate copies of the originals, and shall be deemed to be admitted in evidence as if they were the originals.

"That the plaintiff has been and is now continuously in possession of the premises described in the complaint since January 1962 and has since January 1962 claimed the said premises as the owner and in possession of the same.

"That the County of Los Angeles failed to exercise any of its rights under the provisions of the Revenue & Taxation Code to offer to purchase from the State of California the real property described in the complaint for the sum of $1.00 or any other nominal amount for the purpose of resale by it to restore said property to the tax rolls for the purpose of taxation."

The determinative issue here is: Does a redemption by the payment of delinquent taxes, pursuant to Revenue and Taxation Code sections 4101 and 4112, effect a transfer of title to the person who pays the taxes where such redemptioner had no prior interest in the property redeemed?

If title transfers, the judgment for defendant and against plaintiff fails. ■ In a quiet title action it is incumbent upon plaintiff to show superior title in himself. Plaintiff's action must prevail on the strength of his title, not the weak-

ness of defendant.[1] The sole claim to title by plaintiff is through his redemption of the property by payment of delinquent property taxes. The argument by plaintiff that the defendant's mortgage was extinguished on August 3, 1960, by deed from the tax collector to the State of California seeks to diminish the interest held by defendant. It does not contribute to any title claimed by plaintiff.

The acknowledgment by plaintiff that he claims no title through former owners narrows the question to the one stated issue.

Plaintiff's contention that he has acquired title by the payment of the delinquent taxes is not correct as a matter of law. Plaintiff's error lies in his failure to distinguish between the *privilege of redemption* and the *effect of redemption*. The privilege of redemption of tax-sold or tax-deeded property has long been considered to be personal to the taxpayer or to his successor in interest. Similarly, in the case of encumbered property sold upon default of the trust deed or mortgage, the rule has been that only the owner or his successor in interest is entitled to redeem. (Code Civ. Proc., § 701; 52 Cal.L.Rev. 846.) ▮ The redemption of tax-sold or tax-deeded property by the payment of the delinquent taxes has never been considered to be a means of transferring title to a total stranger. Its purpose has always been to provide a means by which the former owner or his successor in interest can have the title restored to him after its loss through a tax sale.

Prior to 1955, there was no question in California that only the taxpayer or his successor in interest was entitled to redeem under Revenue and Taxation Code section 4101. Before 1955, section 4101 read as follows:

"Tax-sold property and, if the right of redemption has not been terminated, tax-deeded property may be redeemed by the redemptioner until the right of redemption is terminated. The 'redemptioner' is the person whose estate has been sold or his successor in interest.''

In 1955, however, section 4101 was amended[2] to eliminate the last sentence and the words "by the redemptioner" in the first sentence. It was not until 1963 that a California court interpreted the effect of this amendment. (*Nutting* v. *Herman Timber Co.* (1963) 214 Cal.App.2d 650 [29 Cal.Rptr. 754].)

[1] *Ernie* v. *Trinity Lutheran Church*, 51 Cal.2d 702, 706 [336 P.2d 525]; *Williams* v. *City of San Pedro etc. Co.*, 153 Cal. 44, 49 [94 P. 234]; *Hohn* v. *Riverside County Flood Control etc. Dist.*, 228 Cal.App.2d 605, 610 [39 Cal.Rptr. 647].

[2] Stats. 1955, ch. 376, p. 835.

■ The right of redemption, after property has been tax-sold or tax-deeded to the state, is nothing more than a personal privilege granted by statute to a delinquent taxpayer or his successor in interest to allow him to divest the state's title in the tax-deeded property upon payment of all the delinquent taxes. It is not, and never has been, a means of conveying title to any person who happens to redeem the property regardless of his prior interest. (*Mercury Herold Co.* v. *Moore* (1943) 22 Cal.2d 269 [138 P.2d 673, 147 A.L.R. 1111]; *People* v. *Lucas* (1961) 55 Cal.2d 564 [11 Cal.Rptr. 745, 360 P.2d 321].)

In *People* v. *Lucas, supra,* at page 569, the court describes the privilege of redemption in the following language, quoting from *People* v. *Maxfield,* 30 Cal.2d 485 [183 P.2d 897]: " 'However, the only difference between the state's title and that of a private purchaser is the privilege of redemption. ''Upon execution of the deed [to the state] the property owner forfeited all rights in the property except the privilege of redeeming it at any time before the state disposed of it'' (*Mercury Herald Co.* v. *Moore,* 22 Cal.2d 269, 273 [138 P.2d 673, 147 A.L.R. 1111]). The state's title is absolute but subject to defeasance should the former owner exercise his privilege of redemption. The tax collector's receipt authorized by section 4107 of the Revenue and Taxation Code which is recorded ''like a deed,'' is a reconveyance of an absolute title owned by the state and issued upon performance of all conditions necessary for redemption.' "

The court in *People* v. *Lucas* did not consider a redemption under Revenue and Taxation Code section 4101 as a transfer of the title to the redemptioner, regardless of whether he had any prior interest in the property (p. 568): "In any event, taxes are exactions for the support of government, not the purchase price of property. By paying the taxes upon redemption defendants were paying the amount due for that support and were not buying the land and timber."

■ The right of redemption is merely a privilege granted to the taxpayer to have the state's title to his property divested upon the payment of all the delinquent taxes. When such right is exercised its does not operate as a conveyance of property similar to the case when the state sells tax-deeded property at auction. In the latter instance, the purchaser takes the title free and clear of all encumbrances and in some cases may obtain a better title than the taxpayer had originally. However, where the property is redeemed by the pay-

ment of delinquent taxes, the taxpayer does not obtain a better title than he had before but merely has the state's title extinguished and his title reasserted. Revenue and Taxation Code section 4112 expressly states that: "On redemption the deed becomes null and any interest acquired by virtue of the sale to the State ceases."

The purpose of the 1955 amendment to section 4101 was, apparently, to broaden the privilege of redeeming tax-sold or deeded property to anyone who could pay the taxes. Before 1955, the only person who could pay the delinquent taxes and redeem the property was the taxpayer or his successor in interest. The lienholders on the property were in no position to protect their interests by redeeming the property, with the result that after the property was tax-deeded to the state and subsequently sold at auction, their encumbrances were extinguished. (Rev. & Tax. Code, § 3520; *Potter* v. *Entler*, 71 Cal.App.2d 710, 713 [163 P.2d 490]; 47 Cal.Jur.2d, Taxation, § 310, p. 55.)

The 1955 amendment now permits lienholders and other persons having an interest in the property to protect their interest by redeeming the property. ■ While the 1955 amendment broadens the privilege of redemption, it does not change the effect of redemption. A redemptioner still does not acquire title to the property by the act of redemption if he had no title before. (*Spencer* v. *Harmon Enterprises, Inc.* (1965) 234 Cal.App.2d 614 [44 Cal.Rptr. 683].)

The case of *Callan* v. *Superior Court* (1962) 204 Cal.App. 2d 652 [22 Cal.Rptr. 508] cited by the plaintiff does not lend support to the argument that a redemptioner under section 4101 acquires title to the redeemed property. *Callan* v. *Superior Court* was a criminal action and did not, either directly or indirectly, involve an interpretation of Revenue and Taxation Code section 4101. The court did not state or even intimate that a redemptioner under section 4101 acquired title. The court merely said that tax-deeded property, by the payment of delinquent taxes, may be redeemed by anyone and thus reclaimed from the state. This is true; however, the fact that anyone can redeem tax-deeded property does not mean that title to the property is automatically vested in the redemptioner. In *Callan,* reliance of title was not upon redemption providing title, but rather from certain quit claim deeds which had been forged.

In *Nutting* v. *Herman Timber Co.* (1963) 214 Cal.App.2d 650 [29 Cal.Rptr. 754], the defendant claimed title to proper-

ty to which it had no prior interest, by reason of its payment of the delinquent taxes due on the property after the property had been tax-deeded to the state. Defendant also claimed title on the ground of adverse possession. The court rejected both of the defendant's contentions and specifically held that the redemptioner did not acquire title to the property solely by virtue of his paying the delinquent taxes. The redemptioner was held to possess no greater rights to the property than those which he had prior to redemption. The court in its opinion on page 655 distinguished between a conveyance by the state of tax-deeded land and a divestment of the state's title through a redemption: "Its inceptive vice is in its assumption that a redemption equates with a conveyance by the state of its tax-deeded lands to the end that the redeeming owner obtains a greater title than that enjoyed before the delinquency. He does not. A conveyance by the state of tax-deeded lands transfers to the grantee all right, title and interest which the state had in the lands free and clear (with certain exceptions) of encumbrances (Rev. & Tax. Code, § 3712), cutting off the right of redemption, and the purchaser may sometimes obtain a better title than the person against whom the taxes were assessed. (*Helvey* v. *Sax,* 38 Cal.2d 21, 24 [237 P.2d 269].) A redemption, however, merely terminates the state's tax title. (Rev. & Tax. Code, § 4112.)''

In *Hohn* v. *Riverside County Flood Control etc. Dist.* (1964) 228 Cal.App.2d 605 [39 Cal.Rptr. 647], the court said at page 613: "Real property deeded to the state may be redeemed by payment of all delinquencies and statutory penalties at any time prior to the disposition of said property by the state (Rev. & Tax. Code, § 4101), and upon redemption the effect of sale and deed to the state is terminated and title is restored to the former owner or his successor in interest."

The decision in *Spencer* v. *Harmon Enterprises, Inc.* (1965) 234 Cal.App.2d 614 [44 Cal.Rptr. 683] is in point though patent fraud is there present, while in the case before us there is none. The court there considered the effect of the 1955 amendment to Revenue and Taxation Code section 4101 in light of the argument advanced by Harmon Enterprises that a redemption of tax-deeded property, pursuant to Revenue and Taxation Code section 4101 conveyed title to the redemptioner.

In *Spencer* v. *Harmon Enterprises,* a stranger to the property attempted to acquire title by the payment of the

delinquent taxes on the property after it had been tax-deeded to the state. This redemptioner later assigned whatever interest she had acquired by that act to the defendant Harmon Enterprises. The owner of record had died, and Harmon Enterprises petitioned the court and had one of their employees appointed as administrator of the estate. An action to quiet title was filed against the estate by Harmon Enterprises to which the administrator chose not to answer, and Harmon Enterprises took their default. The heirs then brought an action to quiet title and to recover damages for slander of title. As a defense, Harmon Enterprises claimed that their assignor had obtained title to the property by the payment of the delinquent taxes and receipt of a certificate of redemption. The court said: ''Appellants argue that Diana Randolph had color of title by reason of the payment by her of past due taxes after the land was deeded to the state, and in support of this contention they cite Revenue and Taxation Code section 4101 for whatever support it may have given them; that section presently reads as follows: 'Tax-sold property and, if the right of redemption has not been terminated, tax-deeded property may be redeemed until the right of redemption is terminated.'

''The section does not purport to give any right in the land to a volunteer who pays delinquent taxes. However, the appellants place considerable argumentative weight on the supposed effect of the amendment of that section in 1955. Prior to that time the section read as follows: 'Tax-sold property and, if the right of redemption has not been terminated, tax-deeded property may be redeemed by the redemptioner until the right of redemption is terminated. The *''redemptioner''* *is the person whose estate has been sold or his successor in interest.'* (Italics added.)

''The appellants assert that by this change the Legislature meant to give some kind of right to a volunteer who pays delinquent taxes to the state. However, it is a strange argument that would give to a volunteer *sub silentio* a right which only the former owner of the land, or his heirs, have always previously enjoyed.

''The general rule is that a volunteer acquires no right whatsoever by the payment of taxes on the land of another. (*Huling* v. *Seccombe,* 88 Cal.App. 238, 242 [263 P. 362]; *Stanley* v. *Westoever,* 93 Cal.App. 97, 109 [269 P. 468]; *In re*

*Behymer*, 130 Cal.App. 200, 205-206 [19 P.2d 829]; *Secret Valley Land Co.* v. *Perry*, 187 Cal. 420, 425 [202 P. 449].)''[3]

''It is next argued by appellants that, because the State of California held deeds on two occasions because of the prolonged failure of anyone to pay taxes, the plaintiff had no right in this suit to claim damages for slander of title during such periods when the state thus had title to the land. It is true that a deed to the state conveys absolute title to the property, subject only to the right of redemption. (*People* v. *Lucas*, 55 Cal.2d 564, 568 [11 Cal.Rptr. 745, 360 P.2d 321]; *People* v. *Maxfield*, 30 Cal.2d 485, 487-488 [183 P.2d 897].) But it is also true that upon payment of the delinquent taxes the rights of the heirs revive in full strength. As is said in section 4112 of Revenue and Taxation Code: 'On redemption, the deed becomes null and any interest acquired by virtue of the sale to the State ceases.' '' (*Ibid.*, p. 625-626.)

The judgment is affirmed.

Kaus, P. J., and Frampton, J. pro tem.,* concurred.

A petition for a rehearing was denied June 16, 1967, and appellant's petition for a hearing by the Supreme Court was denied July 19, 1967.

---

[3]A volunteer redemptioner does obtain some benefit by virtue of his certificate of redemption. If he is in possession, as is the case before us, and if he has not acquired any right by adverse possession, which is the case before us, he does protect himself from (1) an accounting to the state controller of proceeds from tax-deeded property (Rev. & Tax. Code, § 3652); and (2) relinquishment of possession to the controller on his demand (Rev. & Tax. Code, § 3653) or right of unlawful detainer or ejectment action by the controller (Rev. & Tax. Code, § 3654).

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.