**William LITTLE, Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 77-3102.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 7, 1983.

Decided May 16, 1983.

Ernest J. Brown, Dept. of Justice, Washington, D.C., for defendant-appellant.

Robert O. Harker, Pasadena, Cal., for plaintiff-appellee.

Before CHAMBERS, WALLACE and NORRIS, Circuit Judges.

NORRIS, Circuit Judge:

I

This appeal revolves around a parcel of real property deeded to the State of California in satisfaction of a county property tax lien. The deed to the state was executed pursuant to Cal.Rev. & Tax Code §§ 3511–3520 and conveyed "absolute title to the property."[1] Appellee Little subsequently bought the property from the State for $4,500 at a county auction.

In addition to the senior county tax lien that was discharged by the deed to the State, the property had been encumbered by two junior Internal Revenue Service liens.[2] The latter were not extinguished by the conveyance to the State or the sale to Little, and in April 1977 the government tried to sell the property to collect its liens. Little obtained a Temporary Restraining Order barring the sale and brought this action to permanently enjoin the government from selling the property on the grounds that the Internal Revenue Service liens were no longer valid.

The district court found the liens valid and denied the injunction, but ruled for Little on his alternative claim that he was equitably subrogated to the county tax lien because, in purchasing the property, he had discharged the senior county lien and there-

---

1. Cal.Rev. & Tax Code § 3520 (Deering 1975) provides in part:

   The deed conveys to the State the absolute title to the property, free of all encumbrances, except:

   (1) Liens for taxes levied for municipal, irrigation, reclamation, protection, flood control, public utility or other district purposes, not included among those taxes and assessments for delinquency in the payment of which the property is conveyed to the State.

   (2) Liens for special assessments collected on tax rolls.

   (3) Liens or assessments for other amounts which by law are collected on tax rolls by or for account of cities.

   (4) Easements constituting servitudes upon or burdens to the property; water rights, the record title to which is held separately from the title to the property; and restrictions of record.

2. At the time of the sale to Little the property was valued in excess of $10,000. The county lien had been for $4,844.56, and the two Internal Revenue Service liens were for $1,212.04 and $1,415.57, respectively.

by benefited the government. Accordingly, the district court entered judgment declaring that Little was entitled to the first $4,500 of the proceeds from the sale of the property. The government appeals from this part of the judgment.

We reverse the part of the judgment finding subrogation because we feel that Little was never in a position to discharge the county lien. That lien was legally extinguished when the State of California became the owner in fee simple of the property, and any benefit to the United States had its origin in that event, not in the subsequent purchase by Little.

## II

In determining Little's rights relative to the Internal Revenue Service liens, we must look to the applicable local law. *See* 26 U.S.C. § 6323(i)(2) (1976). The relevant California law is codified in Cal.Rev. & Tax. Code § 2194 and §§ 3511–3520 (Deering 1975).

Little's claim of subrogation to the county tax lien is grounded in the assumption that he discharged the county lien when he purchased the property. However, according to Cal.Rev. & Tax.Code § 2194 that lien was extinguished when the property was deeded to the State pursuant to Cal.Rev. & Tax.Code § 3511. Moreover, Cal.Civ.Code § 2910 (Deering 1972) provides generally that "the sale of any property on which there is a lien, in satisfaction of the claim secured thereby ... extinguishes the lien thereon." The only encumbrances which survive the transfer of title to the State are those specifically mentioned in Cal.Rev. & Tax.Code § 3520 and those which are not subject to the jurisdiction of California, *e.g.,* the Internal Revenue Service liens in the present case. *See United States v. Security Trust & Savings Bank,* 340 U.S. 47, 49, 71 S.Ct. 111, 112, 95 L.Ed. 53 (1950).

That the county tax lien is extinguished when the State acquires the delinquent property follows from the State's sole purpose in engaging in the transaction: the collection of taxes. *Anglo California National Bank v. Leland,* 9 Cal.2d 347, 350, 70 P.2d 937 (1937). The State takes the property in lieu of taxes and, as the new owner, assumes the risk that a later sale will not generate sufficient funds to offset the entire tax debt. At the same time, in its capacity as owner the State is empowered to sell the property, if possible, for more than the outstanding taxes and to retain the surplus, *Chesney v. Gresham,* 64 Cal. App.3d 120, 131, 134 Cal.Rptr. 238, 244 (1976), or to exploit the property in any other manner it sees fit. *See, e.g., People v. Lucas,* 55 Cal.2d 564, 570, 11 Cal.Rptr. 745, 747, 360 P.2d 321, 323 (1961).

Such was the state of the title when Little bought the property. The county had ceased to be a lienholder and the State of California had become the absolute owner of the property, subject only to the Internal Revenue Service liens. If removal of the senior county lien was of any benefit to the United States, the United States is indebted to the State of California for this favorable turn of events. Little did no more than succeed to the State's title which was already free of the county lien. The district court therefore erred when it held that Little was equitably subrogated to the county tax lien.

The part of the district court's judgment declaring that Little is entitled to the first $4,500 of the proceeds from the sale of the property is therefore

REVERSED.