**William LITTLE, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 82–5387.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 1983.

Decided April 26, 1983.

Kenneth G. Gordon, Hochman, Salkin & DeRoy, Beverly Hills, Cal., for plaintiff-appellant.

Thomas M. Preston, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before ELY, SCHROEDER, and PREGERSON, Circuit Judges.

ELY, Circuit Judge:

At issue in this quiet title action is the validity of the title acquired by the United States in certain improved real property when the United States redeemed such property from the plaintiff pursuant to Section 7425 of the Internal Revenue Code of 1954 (26 U.S.C.). The District Court held that the Government properly exercised its right of redemption and thereby acquired all rights, title and interest in the property free and clear of any claims thereto of the plaintiff. We affirm the judgment of the District Court except as to the correctness of the amount tendered by the United States to the plaintiff in redemption of the subject property. As to such matter, the case is remanded to the District Court for further proceedings not inconsistent with this opinion.

## I. FACTUAL BACKGROUND

William Little (plaintiff) commenced this action on March 23, 1981, by filing a Complaint for Temporary Restraining Order, Preliminary Injunction and Order to Quiet Title in which he sought to prevent the United States from redeeming certain real property. Little also sought a declaration that the title to the subject property rested solely on him. The property, which consists of a 28-unit apartment building, known as 1110 W. Washington Boulevard, Los Angeles, California, was acquired by Alexander Rojas by grant deed dated April 18, 1973. Thereafter, Rojas encumbered the property by a first deed of trust recorded August 25, 1978, naming Commonwealth Land Title Company as trustee with a power of sale. Rojas further encumbered the property by a second trust deed dated November 7, 1978, naming Title Insurance Trust Company trustee with a power of sale.

On July 2, 1979, the property was conveyed via a tax deed to the State of California to satisfy delinquent property taxes for the fiscal year 1973–74. This tax deed was recorded in the Office of the County Recorder for Los Angeles County on July 17, 1979. By grant deed dated May 6, 1980, Rojas transferred a one-half undivided interest in the property to Bell Builders Supply, Inc., a California corporation. The deed was duly recorded on May 8, 1980. Thereafter, on September 17, 1980, the Internal Revenue Service recorded a notice of federal tax lien with the Los Angeles County Recorder in the name of Bell Builders Supply, Inc., for unpaid federal employment taxes owed by that corporation for the tax period ended March 31, 1980, in the amount of $12,587.37. The Internal Revenue Service subsequently filed a second notice of federal tax lien against Bell Builders Supply, Inc. on November 4, 1980, for unpaid federal employment taxes due for the period ended June 30, 1980, in the total amount of $12,220.96.

On December 16, 1980, the subject property was sold by the trustee under the second deed of trust to Jess Mendoza for $23,670. The trustee's deed transferring the property to Mendoza was recorded on January 21, 1981. By grant deed dated December 17, 1980 (recorded January 28, 1981) Mendoza transferred his interest in the subject property to William Little, the plaintiff herein.

On March 19, and 20, 1981, the Internal Revenue Service seized the subject property pursuant to its previously recorded tax liens. Thereafter, plaintiff commenced this action seeking to restrain the Government

from exercising its right of redemption pursuant to Section 7425(d) of the Internal Revenue Code. On April 14, 1981, the District Court entered its findings of fact and conclusions of law. The District Court held that the privilege of redeeming the subject property from the State of California by payment of the delinquent property taxes for the years 1973 and 1974 constituted sufficient "property interests" to provide plaintiff's standing to bring this action pursuant to Section 6321 of the Internal Revenue Code. In addition, the District Court held that this privilege of redemption was the interest transferred to Bell Builders Supply, Inc. to which the federal tax liens subsequently attached. The District Court also specifically held that the privilege of redemption, under California law, is transferable, has value, and, therefore, constitutes "property or rights to property" within the meaning of Section 6321 of the Internal Revenue Code. The District Court also found, however, that the plaintiff would suffer irreparable injury if the Government exercised its right to redeem the property under the Internal Revenue Code, and entered an order granting a preliminary injunction restraining the Government from exercising its right of redemption.

On April 15, 1981, the final day of the 120-day statutory period for redeeming the subject property after the December 16, 1980 sale under the second deed of trust (Section 7425(d)), this court stayed the injunctive order of the District Court pending appeal and the Government timely redeemed the subject property from the plaintiff.[1] A certificate of redemption was properly recorded with the Office of the County Recorder in Los Angeles on April 17, 1981.

On May 14, 1981, the trustee under the first deed of trust filed a notice of a trustee's sale with respect to the first deed of trust to be held on May 28, 1981. At the sale, the plaintiff's assignee purchased the property for the sum of $42,611.50, thereby discharging the debt secured by the first deed of trust.[2] The United States, which at that time had title to the subject property pursuant to its redemption of April 15, 1981, was not notified as to the foreclosure and sale.

Thereafter, plaintiff filed, by leave of court, his first amended and supplemental complaint.[3] In his amended complaint, plaintiff again alleged that the United States did not have a federal statutory right of redemption because Bell Builders Supply, Inc. did not acquire from Rojas a "property interest" to which the federal tax lien attached. Plaintiff also asserted, in the alternative, that if the alleged right of redemption had been properly exercised, the Government failed to tender the proper amount upon redemption pursuant to 28 U.S.C. § 2410(d) and Treasury Regulations on Procedure and Administration (1954 Code) § 301.7425–4(b) (26 C.F.R.). Finally, plaintiff contended that if the redemption was proper, the Government acquired title to the property subject to a senior encumbrance, i.e., the first deed of trust, and that the subsequent foreclosure and sale on May 28, 1981, at which plaintiff's assignee purchased the property, divested the Government of the title it had acquired through redemption. Additionally, plaintiff offered

1. This court stayed the District Court's order on the basis of the Government's appeal and emergency motion pursuant to 28 U.S.C. § 1292(a)(1). The appeal was later dismissed as moot.

2. Plaintiff allegedly acquired his beneficial interest in the note secured by the first deed of trust from a W. Michael Mayock, who had received that interest from the original beneficiaries on October 27, 1980. However, the assignment of the promissory note attached to plaintiff's Response to the defendant's Statement of Genuine Issues of Fact, was executed on March 3, 1981, and purports to transfer the beneficial interest from Mayock to Frank Darmiento III, the nominee of the plaintiff. Thereafter, on May 7, 1981, Darmiento caused a substitution of the trustee under the first deed of trust, appointing Joel Mithers as trustee.

3. Although the District Court's temporary injunction against the Government of April 14, 1981 was stayed by this court (see note 1, supra ), the merits of the case were not finally decided. For this reason the District Court permitted the plaintiff to file an amended and supplemental complaint.

to pay in full the remaining tax lien against Bell Builders Supply, Inc. recorded on November 4, 1980, asserting that satisfaction of that lien would remove any Government ownership or lien interest in the subject property.

Cross motions for summary judgment were filed by both parties. The District Court granted the Government's motion and, consequently, dismissed plaintiff's complaint. In its findings of fact and conclusions of law, the District Court held that the Government had properly exercised its right of redemption with respect to the real property involved in this action, and therefore, had acquired title to the property from the date of redemption by operation of Section 7425(d) of the Internal Revenue Code of 1954. The District Court also specifically rejected the plaintiff's request to quiet title to the property which was based on the foreclosure of the first deed of trust and the May 28, 1981 trustee's sale at which plaintiff allegedly acquired title to the subject property through his assignee. The District Court held, in this regard, that the Government's title to the property was derived from the enforcement of a lien, and that the nonjudicial sale of the subject property to satisfy a senior lien under the first deed of trust, without specific notice to the United States as required by Section 7425(c)(1), was made subject to and without disturbing the Government's title. Consequently, the District Court declared that the title in the United States was free and clear of any and all rights, title and interest of the plaintiff with respect to the redeemed property. From this adverse judgment plaintiff appeals.

## II. ISSUES PRESENTED

This appeal raises three issues. First, whether, in granting summary judgment for the United States and dismissing the plaintiff's complaint, the District Court correctly held that the taxpayer (Bell Builders Supply, Inc.) had a property interest, within the meaning of Section 6321 of the Internal Revenue Code of 1954, in the subject real property and that, consequently, the Government's tax liens attached to that interest. Second, whether the District Court correctly determined that the United States properly exercised its right of redemption with respect to the subject real property and, thereby, acquired all rights, title and interest in the property free of any claims thereto of the plaintiff. Third, whether the United States, in exercising its right of redemption, tendered the proper amount to plaintiff.

## III. ANALYSIS

First, whether, in granting summary judgment for the United States and dismissing the plaintiff's complaint, the District Court correctly held that the taxpayer (Bell Builders Supply, Inc.) had a property interest, within the meaning of Section 6321 of the Internal Revenue Code of 1954, in the subject real property and that, consequently, the Government's tax liens attached to that interest.[4]

Plaintiff contends that the taxpayer, Bell Builders Supply, Inc., could acquire from his predecessor in interest, Rojas, that which Rojas had to transfer, and that, since at the time of the transfer to Bell Builders Supply, Inc. the property in question had been tax-deeded to the State of California, the only interest acquired by Bell Builders Supply, Inc. was the statutory privilege of redemp-

4. Internal Revenue Code of 1954 (26 U.S.C.):
SEC. 6321. LIEN FOR TAXES.
 If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

SEC. 6322. [as amended by Sec. 113(a), Federal Tax Lien Act of 1966, Pub.L. No. 89–719, 80 Stat. 1125] PERIOD OF LIEN.
 Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time.

tion. This privilege of redemption, so plaintiff contends, does not rise to the level of "property or a right to property" within the meaning of Section 6321 of the Internal Revenue Code, thereby, rendering void the Government's interest in the subject property.

 Section 6321 of the Internal Revenue Code of 1954 provides that if any person liable to pay any tax neglects or refuses to do so, the amount of the tax (including interest, additions, penalties or costs that may accrue) "shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." The lien provided for in Section 6321 arises at the time the tax assessment is made and continues until the underlying liability is satisfied or becomes unenforceable by reason of lapse of time. Section 6322 of the Internal Revenue Code of 1954. The initial question in this case is whether the taxpayer (Bell Builders Supply, Inc.) had "property or rights to property" to which the Government's tax liens against the taxpayer could attach. In answering that question, resort to state law .

is required, for in applying a provision of the Internal Revenue Code, state law controls in determining the nature of the legal interest which the taxpayer has in the property sought to be reached by the federal statute. *Aquilino v. United States,* 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960); *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958); *Morgan v. Commissioner,* 309 U.S. 78, 82, 60 S.Ct. 424, 427, 84 L.Ed. 585 (1940). Of course, once it is determined that the taxpayer possesses property or rights to property recognizable under state law the federal tax consequences pertaining to such rights are solely a matter of federal law and, consequently, liens provided by federal statute may not be defeated by state exemption statutes. *United States v. Bess,* 357 U.S. at 57, 78 S.Ct. at 1058.

 Resolution of the question whether Bell Builders Supply, Inc. possessed "property or rights to property" under Section 6321 involves determining whether under California law [5] the interest in question

**5.** California law provides that the tax collector shall annually sell to the State of California property on which taxes are unpaid, and, five years later, if the property has not been redeemed by payment of the delinquent taxes, execute a deed conveying the property to the State. California Rev. & Tax. Code §§ 3351, 3352, 3436, 3511 (West 1970). Redemption of both "tax-sold" and "tax-deeded" property is provided by California Rev. & Tax Code § 4101 (West 1970). Under that provision, tax-sold property and, if the right of redemption has not been terminated, tax-deeded property, may be redeemed from the State. When property is deeded to the State, Cal.Rev. & Tax Code § 3520 (West 1970) provides that the tax deed conveys the absolute title to the property, free of all encumbrances, except certain liens and assessments not relevant herein. The so-called tax sale to the State, prior to the issuance of a deed to the State, does little more than establish a lien in favor of the State, subject to the absolute right of the taxpayer to clear his title by paying off the lien. After five years, however, when the property is deeded to the State, there is a transfer of beneficial ownership, subject to a privilege or opportunity to redeem the property if the State has not disposed of the property or taken other steps to terminate the privilege of redemption. *Weber v. Wells,* 154 F.2d 1004 (9th Cir.1946).

Upon redemption of tax-deeded property, the State's title is rendered null and void and the interest acquired by virtue of the sale to the State ceases. Thus, even though a successor in interest may redeem the property, redemption does not operate to give the redemptioner the State's title. The State's title is extinguished by the redemption, and the redemptioner has only the title existing prior to the State's title subject to any encumbrances or liens at that time. *Potter v. Entler,* 71 Cal.App.2d 710, 163 P.2d 490 (1945). *Potter v. County of Los Angeles,* 251 Cal.App.2d 280, 59 Cal.Rptr. 335 (1967). A redemptioner, however, or any other person claiming through him, may bring suit against the State to quiet title to all or any portion of the property and prosecute it to final judgment. Cal.Rev. & Tax Code § 4113 (West 1970).

It should also be noted that in California redemptions from tax deeds are favored in the law because the title acquired by the State via a tax deed is not of the same nature as that vested in a private purchaser. The object of the purchase by the State is not the acquisition of the property, but rather the collection of taxes. *Hossom v. City of Long Beach,* 83 Cal. App.2d 745, 189 P.2d 787 (1948); *Anglo California Nat'l Bank of San Francisco v. Leland,* 9 Cal.2d 347, 70 P.2d 937 (1937). Moreover, it is

is an economic asset in the sense that it has pecuniary worth and is transferable, so that a claim can be enforced against it. After a careful review of the record and California case law, we conclude that the right of redemption acquired by the taxpayer in the instant case has pecuniary worth and is transferable. *See Potter v. County of Los Angeles,* 251 Cal.App.2d 280, 59 Cal.Rptr. 335 (1967); *Potter v. Entler,* 71 Cal.App.2d 710, 163 P.2d 490 (1945); *Graham v. Reed,* 83 Cal.App. 516, 257 P. 131 (1927). The record shows that the taxpayer gave valuable (although unspecified) consideration to acquire the right. The record further shows that when the second deed of trust on the property was foreclosed in December 1980, Jess Mendoza purchased the remaining interest in the property—*i.e.,* the right to redeem the property from the State of California—for some $23,000. Indeed, the very fact that the plaintiff instituted this action to quiet title and to, thereby, secure for himself the right to redeem the property from the State of California, establishes that the right of redemption in issue is a valuable right. Thus, the plaintiff is in the untenable position of arguing, on the one hand, that he should prevail against the Government because Bell Builders Supply, Inc. did not acquire an interest in the subject real property to which the Government's tax liens could attach, and asserting, on the other hand, that title should be quieted in him by virtue of the interest he acquired in the property at the December 1980 foreclosure sale. The only possible interest acquired by the plaintiff at that sale was the right to redeem the property from the State of California. If this right did not rise to the level of a property interest, *i.e.,* an interest protected under state law, then plaintiff would have no basis for maintaining the instant quiet title action. If, however, the right of redemption at stake here is a valuable right to property,

and we hold that it is, then there is not only standing for plaintiff's action but there is also a right to property to which the Government's tax liens attached.

■ The California cases cited by plaintiff do not support his position that a right of redemption does not constitute property or rights to property within the meaning of Section 6321 of the Internal Revenue Code. *See Potter v. County of Los Angeles,* 251 Cal.App.2d 280, 59 Cal.Rptr. 335 (1967); *Mercury Herald Co. v. Moore,* 22 Cal.2d 269, 138 P.2d 673 (1943); *Helvey v. Bank of America,* 43 Cal.App.2d 532, 111 P.2d 390 (1941). These cases seem to hold that the right of redemption under California law is nothing more than a personal privilege granted by statute to a delinquent taxpayer to allow him to divest the State's title in tax deeded property upon payment of all delinquent taxes. From these cases appellant argues that the right of redemption is neither a vested nor a substantial right and, accordingly, cannot meet the definitional requirements of Section 6321 of the Internal Revenue Code. We agree with the District Court's conclusion that such reasoning is myopic. Simply because an interest is classified as a "privilege" under state law should not exempt such interest from attachment by a federal tax lien if such interest represents an economic asset in the sense that it has pecuniary worth and is transferable, so that a claim can be enforced against it. As previously discussed, the interest in the instant case meets this definition and should, therefore, be considered a property interest within the meaning of Section 6321 of the Internal Revenue Code.

■ Second, whether the District Court correctly determined that the United States

---

the settled policy of state law to give a delinquent taxpayer every reasonable opportunity compatible with the rights of the State to redeem his property and to return it to the tax rolls for further governmental support. *People v. Gustafson,* 53 Cal.App.2d 230, 127 P.2d 627 (1942).

In the instant case the State of California never disposed of the subject property. Thus, any right of redemption acquired by Bell Builders Supply, Inc. was still exercisable at the time the property was transferred to the plaintiff. Indeed, if the right of redemption had terminated this suit by the plaintiff would be moot.

properly exercised its right of redemption with respect to the subject real property and, thereby, acquired all rights, title and interest in the property free of any claims thereto of the plaintiff.

Section 7425(b) expressly provides that a nonjudicial sale of property on which the United States has a lien, *or a title derived from the enforcement of a lien,* shall be made "subject to and without disturbing such lien or *title*" if the United States is not given notice of such sale in the manner prescribed in subsection (c)(1).[6] (Emphasis added.) The record here shows that on April 15, 1981, the Internal Revenue Service

timely redeemed the subject real property pursuant to Section 7425 of the Internal Revenue Code and further shows that the Government duly recorded its certificate of redemption on April 17, 1981, with the Office of the County Recorder in Los Angeles, California. Thereafter on May 28, 1981, there was a foreclosure of the first deed of trust and a nonjudicial sale of the property to the plaintiff's assignee. It is clear from the record that no notice of the May 28 sale as provided by Sections 7425(b) and (c), was given to the Internal Revenue Service. It therefore follows, under Section 7425(b), that the title acquired by the United States

**6.** Internal Revenue Code of 1954 (26 U.S.C.) Section 7425 provides in pertinent part:

SEC. 7425. DISCHARGE OF LIENS.

(a) *Judicial Proceedings.*—If the United States is not joined as a party, a judgment in any civil action or suit described in subsection (a) of section 2410 of title 28 of the United States Code, or a judicial sale pursuant to such a judgment, with respect to property on which the United States has or claims a lien under the provisions of this title—

(1) shall be made subject to and without disturbing the lien of the United States, if notice of such lien has been filed in the place provided by law for such filing at the time such action or suit is commenced, or

(2) shall have the same effect with respect to the discharge or divestment of such lien of the United States as may be provided with respect to such matters by the local law of the place where such property is situated, if no notice of such lien has been filed in the place provided by law for such filing at the time such action or suit is commenced or if the law makes no provision for such filing. If a judicial sale of property pursuant to a judgment in any civil action or suit to which the United States is not a party discharges a lien of the United States arising under the provisions of this title, the United States may claim, with the same priority as its lien had against the property sold, the proceeds (exclusive of costs) of such sale at any time before the distribution of such proceeds is ordered.

(b) *Other Sales.*—Notwithstanding subsection (a) a sale of property on which the United States has or claims a lien, or a title derived from enforcement of a lien, under the provisions of this title, made pursuant to an instrument creating a lien on such property, pursuant to a confession of judgment on the obligation secured by such an instrument, or pursuant to a nonjudicial sale under a statutory lien on such property—

(1) shall, except as otherwise provided, be made subject to and without disturbing such lien or title, if notice of such lien was filed or such title recorded in the place provided by law for such filing or recording more than 30 days before such sale and the United States is not given notice of such sale in the manner prescribed in subsection (c)(1); or

(2) shall have the same effect with respect to discharge or divestment of such lien or such title of the United States, as may be provided with respect to such matters by the local law of the place where such property is situated, if—

(A) notice of such lien or such title was not filed or recorded in the place provided by law for such filing more than 30 days before such sale,

(B) the law makes no provisions for such filing, or

(C) notice of such sale is given in the manner prescribed in subsection (c)(1).

(c) *Special Rules.*—

(1) *Notice of sale.*—Notice of sale to which subsection (b) applies shall be given (in accordance with regulations prescribed by the Secretary or his delegate) in writing, by registered or certified mail or by personal service, not less than 25 days prior to such sale, to the Secretary or his delegate.

. . . .

(d) *Redemption by United States.*—

(1) *Right to redeem.*—In the case of a sale of real property to which subsection (b) applies to satisfy a lien prior to that of the United States, the Secretary or his delegate may redeem such property within the period of 120 days from the date of such sale or the period allowable for redemption under local law, whichever is longer.

(2) *Amount to be paid.*—In any case in which the United States redeems real property pursuant to paragraph (1), the amount to be paid for such property shall be the amount prescribed by subsection (d) of section 2410 of title 28 of the United States Code.

upon its redemption of the property was not disturbed by the subsequent foreclosure and sale of the property.

 Third, whether the United States, in exercising its right of redemption, tendered the proper amount to plaintiff.

With respect to the amount to be paid by the United States upon exercise of its right of redemption, Section 7425(d)(2) provides that the redemption price shall be the amount prescribed by subsection (d) of Section 2410 of Title 28 of the United States Code.[7] In addition, Treasury Regulations on Procedure and Administration (1954 Code) § 301.7425–4(b)(iv) (26 C.F.R.) provide that with respect to a redemption made after December 31, 1976, the redemption price shall include the amount of payment made by a purchaser or his successor in interest after the foreclosure sale to a holder of a senior lien.

The United States upon redemption of the property, following the December 16, 1980 foreclosure and sale, tendered to plaintiff the sum of $24,136.92. This amount represented the amount paid by the purchaser at the foreclosure sale ($23,670) plus interest thereon from the date of the sale to the date of redemption. Plaintiff contends that the redemption price paid by the United States was inadequate. He asserts in this regard that following the foreclosure sale he expended some $16,000 for repairs to the property and further asserts that he paid $60,000 to obtain the beneficial interest in the first deed of trust, a senior encumbrance on the property which was not extinguished by the foreclosure sale. The United States, so plaintiff contends, was required to reimburse him for these two payments when it redeemed the property.

Plaintiff's allegations regarding amounts he expended for repairs and for satisfaction of a senior lien involve factual matters which cannot be resolved from the record as it now stands. The case was disposed of on the basis of the parties' cross motions for summary judgment. Consequently, the District Court held no evidentiary hearing with respect to plaintiff's allegations regarding the inadequacy of the amount tendered by the Government and made no specific findings regarding such allegations. In these circumstances, the question as to the correctness of the amount tendered by the Government cannot properly be resolved on appeal. The matter should be remanded to the District Court for further proceedings.

## CONCLUSION

For the reasons stated above, the judgment of the District Court is affirmed, except as to the matter of the correctness of the amount tendered by the United States. As to such matter, the case is remanded to the District Court for further proceedings.

---

**7.** Section 2410 of 28 U.S.C. provides in pertinent part:

 . . . .

 (d) In any case in which the United States redeems real property under this section or section 7425 of the Internal Revenue Code of 1954, the amount to be paid for such property shall be the sum of—

 (1) the actual amount paid by the purchaser at such sale (which, in the case of a purchaser who is the holder of the lien being foreclosed, shall include the amount of the obligation secured by such lien to the extent satisfied by reason of such sale),

 (2) interest on the amount paid (as determined under paragraph (1)) at 6 percent per annum from the date of such sale, and

 (3) the amount (if any) equal to the excess of (A) the expenses necessarily incurred in connection with such property, over (B) the income from such property plus (to the extent such property is used by the purchaser) a reasonable rental value of such property.