**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Harry S. STONEHILL; Robert P. Brooks, Defendants–Appellants.**

**No. 95–17019.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 15, 1996.

Decided May 20, 1996.

Robert E. Heggestad, Heggestad & Weiss, Washington, D.C.; for defendants-appellants.

· John McCarthy, Tax Division, United States Department of Justice, Washington, D.C., for plaintiff-appellee.

Before BOOCHEVER, HALL, and FERNANDEZ, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Appellants Harry S. Stonehill and Robert P. Brooks seek to prevent the United States from selling real property in which they have an interest, pursuant to a federal tax lien. The property is held in a tax receivership, and the receiver entered into a contract to sell the property to the Town of Tiburon, California, for $6.8 million. The terms of the contract include a provision requiring dismissal of two state lawsuits filed against Tiburon by the receiver alleging that Tiburon depressed the value of the property through a series of illegal zoning procedures. The receiver agreed to dismiss the lawsuits on behalf of the receivership, but appellants re-fused to dismiss their personal claims. The district court ordered appellants to dismiss their claims, and they appealed this order. We now affirm.

## I

This case began with a tax dispute filed against the appellants by the United States in 1965. Final judgment was entered against appellants in 1980, and the government subsequently secured liens on appellants' property. In 1984, at appellants' request, the court appointed a tax receiver to manage the foreclosure of the property. The real property at issue here is the last remaining property to be liquidated.

The property is owned by one of the appellants' businesses, Pine Street Corporation, and is a 101-acre tract in Tiburon, California, that is zoned for residential use. The value of this property derives mainly from the ability to construct residences thereon. From 1988 to 1994, Pine Street submitted several applications to Tiburon for approval of a development plan for the property. During the same period Tiburon substantially modified its General Development Plan. At one time the General Plan would have allowed Pine Street to develop one home site per acre. In the end, however, Tiburon approved development of only 19 home sites on this property.

Throughout this process appellants contended that Tiburon engaged in illegal downzoning in order to depress the value of the property so that the town could purchase the parcel for use as designated open space. The tax receiver filed two suits in California state court against Tiburon on behalf of Pine Street and the appellants, claiming inverse condemnation and other zoning improprieties.

After the second lawsuit was filed, the town of Tiburon and the Marin County Open Space Committee entered into negotiations to purchase the property for $6.8 million, with the condition that the receiver would dismiss the two lawsuits against the Town. The district court authorized the receiver to finalize the sale and instructed him to present the final offer to the court for approval.

Appellants submitted a motion for reconsideration, asserting among other things that they objected to dismissal of their complaints against the Town. The district court denied the motion.

The United States then filed a motion to expand the receivership to encompass appellants' personal claims against the Town, contending that these claims were subject to the federal tax liens. The district court granted this motion on April 6, 1995. Appellants then filed a motion to stay in Marin County Superior Court, requesting that court not to take any action to settle or dismiss the state lawsuits pending resolution of the federal proceeding. Before the California Superior Court ruled on this motion, the district court confirmed the sale of the property, and ordered appellants to dismiss their personal claims. On October 10, 1995, the district court issued its final order confirming the sale. Appellants appealed this order on October 17, 1995, and we granted an emergency stay on November 7, 1995.

█ We review a district court's decision involving its supervision of an equitable receivership for abuse of discretion. *SEC v. Hardy,* 803 F.2d 1034, 1037 (9th Cir.1986). Therefore, the district court's order expanding the receivership is reviewed under this standard.

## II

The first issue on appeal concerns whether the government may attach and foreclose upon the appellants' personal lawsuits pursuant to the federal tax lien. We hold that the lawsuits, as choses in action,[1] are personal property subject to attachment and foreclosure by the government.

█ The Internal Revenue Code provides that: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all *property* and *rights to property,* whether real or personal, belonging to such person." 26 U.S.C. § 6321 (emphasis added). The Supreme Court has broadly construed this statutory language, noting that the statute "reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. National Bank of Commerce,* 472 U.S. 713, 719–20, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985). To determine whether the property is subject to the federal tax lien, the court conducts a two-part analysis. First, state law determines the nature of the legal interest the taxpayer has in the property. *Id.* at 722, 105 S.Ct. at 2925; *Little v. United States,* 704 F.2d 1100, 1105 (9th Cir.1983). Once the court determines the state-law right possessed by the taxpayer, then the federal tax consequences are solely a matter of federal law. *National Bank of Commerce,* 472 U.S. at 722, 105 S.Ct. at 2925; *Little,* 704 F.2d at 1105. Thus, federal law controls whether the state-law right constitutes property or rights to property attachable by a federal tax lien. *National Bank of Commerce,* 472 U.S. at 722, 105 S.Ct. at 2925; *Little,* 704 F.2d at 1105; *In re Kimura,* 969 F.2d 806, 810 (9th Cir.1992).

█ Our first inquiry is whether California attaches any property rights to a chose in action, and we find that it does. California courts have consistently construed the Civil Code sections relating to property to include a chose in action, in contract or tort, as personal property. *See* Cal. Civil Code §§ 654 and 663; *Parker v. Walker,* 5 Cal. App.4th 1173, 6 Cal.Rptr.2d 908, 912 (3 Dist. 1992) ("A cause of action to recover money in damages, as well as money recovered in damages, is a chose in action and therefore a form of personal property."); *Carver v. Ferguson,* 254 P.2d 44, 45 (Cal.App. 3 Dist.1953) (holding that a cause of action in tort, being a thing in action, is personal property); *Bensinger v. Davidson,* 147 F.Supp. 240, 245 (S.D.Cal.1956) (holding that a chose in action for unjust enrichment is personal property

---

1. Literally, a thing in action. "A personal right not reduced into possession, but recoverable by a suit at law.... A right to receive or recover a debt, demand, or damages on a cause of action ex contractu or for a tort or omission of a duty.... Personalty to which the owner has right of possession in future, or a right of immediate possession, wrongfully withheld." *Black's Law Dictionary* 241 (6th ed.1990).

under California law, which is subject to a federal tax lien).

■ The second question, then, is whether this interest consists of property or rights to property under 26 U.S.C. § 6321. We have held that if the state law interest is "an economic asset in the sense that it has pecuniary worth and is transferable," then it is subject to the federal tax lien. *Little*, 704 F.2d at 1105–06; *Kimura*, 969 F.2d at 811. We conclude that choses in action in California, such as the lawsuits at issue here, satisfy both of these requirements. First, it is obvious that a right to collect damages, albeit speculative, has pecuniary worth. Second, the California Civil Code specifies that a chose in action, which is "a right to recover money or other personal property by a judicial proceeding," Cal. Civil Code § 953, may be transferred or assigned. Cal. Civil Code § 954. Therefore, appellants' causes of action against Tiburon constitute property or rights to property to which federal tax lien consequences may attach. *Accord United States v. Comparato*, 22 F.3d 455, 457–58 (2nd Cir.) (holding that the taxpayers' vested interest in their deceased son's medical malpractice claims was subject to a federal tax lien), *cert. denied*, —— U.S. ——, 115 S.Ct. 481, 130 L.Ed.2d 394 (1994).

■ Once a federal lien attaches to taxpayers' property, the government may then foreclose upon the property. *See* 28 U.S.C. § 2001. We conclude that the government may foreclose upon the taxpayers' causes of action just as it could any other real or personal property. A taxpayer's chose in action represents one of the taxpayer's assets, and the government has the right to pursue the action to judgment, even if the taxpayer may not have done so himself. The complement to the government's ability to pursue the lawsuit is the ability to settle or dismiss it. *Cf. National Bank of Commerce*, 472 U.S. at 725, 105 S.Ct. at 2927 ("In a levy proceeding, the IRS steps into the taxpayer's shoes ... [and] acquires whatever rights the taxpayer himself possesses.") (internal quotations omitted). If the government was denied this avenue for resolving the suit, then the receivership may not be able to achieve the most advantageous outcome for all concerned.

■ The provisions of 28 U.S.C. § 2001 govern foreclosures of taxpayers' property. This section limits the government receiver's ability to sell foreclosed property at a private sale for an unfair price: "Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property.... No private sale shall be confirmed at a price less than two-thirds of the appraised value." By its terms, section 2001 applies only to real property. But section 2004 provides that sales of personal property must also be conducted "in accordance with section 2001 ..., *unless the court orders otherwise*." 28 U.S.C. § 2004 (emphasis added). Therefore, it is at the district court's discretion whether to obtain appraisals before foreclosing upon personal property, such as appellants' causes of action.

■ The district court determined that the appellants' personal claims against Tiburon were meritless, and therefore, had no intrinsic value. Appellants do not own the property themselves. Instead, they are shareholders in Pine Street Corporation, which itself owns the property. They do not claim they are entitled to collect damages from Tiburon for the decrease in property value caused by the allegedly improper zoning. They concede that this claim belongs solely to the Pine Street Corporation, and is therefore controlled by the receiver. Instead, they claim that they are entitled to consequential damages measured by the increased tax liability they incurred due to interest penalties resulting from the delay in selling the property (from 1989 to now), allegedly caused by the improper zoning.

■ Well-established principles of corporate law prevent a shareholder from bringing an individual direct cause of action for an injury done to the corporation or its property by a third party. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548, 69 S.Ct. 1221, 1226–27, 93 L.Ed. 1528 (1949); *Sutter v. General Petroleum Corp.*, 28 Cal.2d 525, 530, 170 P.2d 898 (1946); *Jones v. H.F. Ahmanson & Co.*, 1 Cal.3d 93, 81 Cal.Rptr. 592, 597–99, 460 P.2d 464 (1969). Therefore, the causes of

action against Tiburon belong solely to the Pine Street Corporation. Appellants' injuries are merely incidental to the injury caused to the corporation by Tiburon. *Cf. J & J Farms, Inc. v. Cargill, Inc.*, 693 F.2d 830, 836 (8th Cir.1982) (holding that losses were not recoverable where they "were the projected result of a collateral or secondary enterprise and thus too remote and speculative"); *Northern Helex Corp. v. United States*, 207 Ct.Cl. 862, 524 F.2d 707, 720 (1975) (noting that the lost profits from a corporation's collateral undertakings, which could not be carried out due to the defendant's breach, were too remote to be recoverable). The appellants have no valid personal claims against Tiburon, regardless of the fact that they are named in the complaints in their individual capacities. Thus, appellants' causes of action have no value. As a result, the district court was within its discretion when it ordered appellants to release and dismiss any claims they may have against Tiburon in connection with this matter.

### III

Even if the district court may properly dismiss their personal claims, appellants contend that the district court erred when it confirmed the sale. They assert three arguments as to why the sale is improper: (1) the statutory requirement of appraisals by three disinterested appraisers was not met, (2) the accepted purchase price represents the depressed value of the property and is therefore unfair, and (3) the purchase price does not include any value for the dismissal of the appellants' personal lawsuits. We have already shown the third argument to be without merit, so we consider only the first two.

### A

The statute governing private sales of real property by the government pursuant to a tax lien, 28 U.S.C. § 2001(b), requires that the court "appoint three disinterested persons to appraise such property." Appellants claim that the three appraisers recommended to the district court by the receiver were not disinterested, and therefore, the statutory appraisal requirement was not met.

Appellants presented, at most, vague assertions of bias on the part of the three appraisers, Messrs. Semple, Carneghi, and Mills. They allege that Semple had previously been retained by Tiburon, so therefore he has an interest in placing the lowest possible value on the land to ensure a low purchase price for the town. But of the three appraisals, his was the highest, which would seem to vitiate this argument. Carneghi has appraised the property before, at the request of the current receiver and his predecessor. Appellants contend that this relationship with the receivers, and "possible fidelity" towards the receivership renders Carneghi "interested." Without more evidence of actual bias by these appraisers, the fact that they have appraised this property before does not necessarily prove they are "interested" parties.

Appellants' allegations against Mills are the least persuasive. Carneghi's company was previously called "Mills–Carneghi–Bautovich," raising a suspicion in appellants' minds that Mills has been associated with Carneghi in the past. There is no indication that any such past association, if it existed, would be evidence of bias by Mills.

The district court found this evidence wholly unpersuasive, and we agree. The statute calls for the appraisers to be disinterested, but it does not require them to be completely unfamiliar with the property and the dispute. They must simply be impartial and unbiased. Without more, we cannot conclude that the district court clearly erred when it accepted these appraisals.

### B

Appellants allege that the accepted purchase price of $6.8 million reflects the depressed value of the property caused by Tiburon's illegal down-zoning, and is therefore an inadequate and unfair price. Thus, appellants reassert their claims against Tiburon, and suggest that the purchase price should reflect the value of the property without the down-zoning. In other words, they argue that they should be compensated as though the Pine Street Corporation has already prevailed in the lawsuits against Tiburon.

By statute, the court must not approve a sale of property pursuant to a tax lien for less than two-thirds of the fair market value. 28 U.S.C. § 2001(b). The district court accepted the purchase price after reviewing three valid appraisals, which show that $6.8 million clearly exceeds two-thirds of the fair market value of the property.

But the purchase agreement also requires the receiver to dismiss the receivership's causes of action against Tiburon. Unlike appellants' meritless personal claims, the receivership has valid claims against Tiburon. However, any value these claims may have is speculative at best, and the district court did consider the value of the lawsuits when it decided to approve the sale.

An attorney experienced in land use litigation submitted his recommendations to the district court regarding the viability of the lawsuits. He ultimately concluded that there is a low probability of a recovery exceeding the current purchase offer, plus the additional cost of litigation and the continuously accruing interest on appellants' tax liability. Furthermore, the receiver, an experienced real estate attorney, indicated that Tiburon would most likely rescind the purchase offer if it did not include dismissal of the lawsuits. If this offer were rejected then the receiver estimated that a sale to a private developer, if an interested buyer were found, would net far less than the $6.8 million offered. The district court considered this information, and noted that: "After carefully studying the proposed agreement, the receiver's motion and supporting documents ... I conclude that the proposed sale achieves the highest possible return on the Tiburon property.... Even the most optimistic evaluation of the claims shows that it is extremely unlikely that defendants could recover enough damages to offset the high expense and long delay of litigation." District Court's Order of August 18, 1995. On this basis, the district court judge then exercised his discretion to forgo appraisals of the lawsuits.

Under these facts we cannot conclude that the district court abused its discretion in approving the sale. We therefore affirm the district court's order approving the sale of the property to Tiburon for the purchase price of $6.8 million.

## IV

For the foregoing reasons, we find that appellants' personal lawsuits are subject to the federal tax lien, and thus, the district court did not abuse its discretion when it expanded the receivership to encompass the lawsuits. Furthermore, we affirm the district court's order confirming the sale of the property. Therefore, we remand so that the district court may order appellants to dismiss and release any claims they may have against Tiburon in connection with this matter, and we order the emergency stay lifted so that the sale can proceed apace.

AFFIRMED and REMANDED.