On its face, the majority opinion seems to be eminently correct, because § 100 of the Constitution of Alabama does say that "[n]o obligation or liability of any person, association, or corporation held or owned by this state . . . shall ever be remitted, released, or postponed, or in any way diminished, by the legislature," and § 40-10-135 does provide that if the former owners of the property wish to redeem, they must pay to the purchaser at the state tax sale a sum equal to "all the taxes due upon such lands, or for which they were sold, and the penalties and all of the taxes that should have been under the law assessed upon the same, if they had been the property of a private citizen of the state." If § 40-10-135 actually assigned to the purchaser at the "bulk sale" the right to collect an "obligation or liability" of the former owners then I would agree that it would be unconstitutional. At the time the State sold the land at the "bulk sale" to the purchaser, there was no "obligation or liability of any person" which was due the State. The obligation or liability of the former owners to pay taxes on the land while they held legal title to it had been extinguished when the land was bought in by the State for the nonpayment of those taxes. There was no "obligation or liability" of the former owners to the State at the time the land was sold by the State to the purchaser at the "bulk sale."
The majority opinion correctly holds that "[l]ands bid in for the State are not assessed for ad valorem taxes until they have been redeemed or sold by the State, thus the effect of thepurchases by the State of lands sold for delinquent taxes is towithdraw the land from further taxation until redeemed or soldby the State," citing Ala. Code 1975, § 40-10-20, and Downing v.City of Russellville, 241 Ala. 494, 3 So.2d 34 (1941).
The majority treats the taxes that were due and owing to the State before the land was bought in by the State as being a continuing obligation of the former owners, owed to the State, which could not be assigned. I believe that the obligation of the former owners to pay delinquent taxes was extinguished when the land was sold, pursuant to statutory authority, to the State for the nonpayment of those taxes. The majority recognizes that once legal title is in the State, the commissioner of revenue has control of it because he "has supervision and control of all real estate bought in by the State at tax sales," and it recognizes that "[h]e has the authority to rent, lease, and operate the lands generally, and also to sell the lands." 539 So.2d at 177. Nevertheless, the majority seems to think that the commissioner, if he sells the land, as he is authorized to do by § 40-10-135, must obtain a price equal to the amount of the delinquent taxes and the costs, etc., connected with the sale, even though the Legislature has specifically authorized him to sell the land for the "best price available" and has granted to a purchaser at such a sale the right to a lien.
I can find no reason why the Legislature is prohibited from allowing the commissioner of revenue to sell the land it has bought in for nonpayment of taxes and to fix the price at which the land will be sold, and imposing such conditions on the sale as it deems meet and proper. In fact, I believe that the Legislature, in order to foster the return of unproductive property to the State's tax rolls, had the power to authorize *Page 181 
what was done in this case. Consequently, I must respectfully dissent, and in my dissent I will trace the history of the various statutes and the reasons I believe the trial court erred.
 I
As I view this case and the various contentions and arguments of the parties and of the State in its amicus brief, these questions are presented:
 (1) Is the redemption price of a "best price" sale (§ 40-10-134) determined pursuant to the provisions of § 40-10-83, as the trial court held, or pursuant to § 40-10-135, as the tax purchaser contends?
 (2) If the price is determined pursuant to the provisions of § 40-10-135, does that section violate Art. IV, § 100, of the Alabama Constitution, which prohibits the State from assigning to anyone its right to collect taxes?
In discussing these two issues, I begin by stating that I believe that the various statutes should be construed in parimateria, especially since each of the statutes deals with tax sales and the rights of the owners of property sold for taxes to redeem the property. Cf. State v. Chesebrough-Ponds, Inc.,441 So.2d 596 (Ala.Civ.App. 1983), rev'd on other grounds,441 So.2d 598 (Ala. 1983); on remand, 441 So.2d 605
(Ala.Civ.App. 1983) (statutes that deal with the same subject matter arein pari materia and should be construed together).
I am of the opinion that there are three sections of Alabama's 1975 Code that cover this controversy. They are §§ 40-10-132, -134, and -135.
Section 40-10-132 provides, in part:
 "It shall be the duty of the land commissioner to cause to be prepared a suitable book, in which shall be entered a description, as accurate as can be obtained, of all the lands which have been bid in by the state, with the amount of state and county taxes due thereon and the date when such lands were bid in; and, when three years shall have elapsed from the date of the sale, such portions of lands as have not been redeemed shall be subject to sale by the state; and the land commissioner with the approval of the governor, may sell the same at private sale to any purchaser, who may pay therefor in cash to the treasurer such sum of money as the land commissioner may ascertain to be sufficient to cover and satisfy all claims of the state and county, which sum shall not be less than the amount of money for which the lands were bid in by the state, with interest thereon at the rate of six percent per annum from the date of sale, together with the amount of all taxes due on said lands since date of sale, with interest thereon at the rate of six percent per annum from the maturity of such taxes; provided, that if lands have not been redeemed or sold by the state within five years from the date of sale, such lands may be sold by the land commissioner as hereinafter provided. (Acts 1935, No. 194, p. 256; Code 1940 T. 51, § 315.)"
This section authorizes the land commissioner to sell all lands that the State has bid in pursuant to the provisions of § 40-10-18, as was the case here, after "three years have elapsed," to a private purchaser, who must pay the State all of the taxes which were due on the land at the date the State bought the land in at the tax sale, plus all taxes that have accrued after that date. This type of sale is sometimes referred to as a "full price" sale.
Section 40-10-134 provides:
 "When lands have been sold for taxes and bought in for the state of Alabama and have not been redeemed or sold by the state and a period of five years has elapsed from the date of sale to the state, the land commissioner, with the approval of the governor, may sell the same at private sale to any purchaser for cash at the best price obtainable, irrespective of the amount of taxes due, after giving notice as provided for in section 40-10-133."
A sale conducted pursuant to this provision of the Code is generally referred to as a "best price" sale, and this sale can occur "[w]hen lands have been sold for taxes and bought in for the state of Alabama and *Page 182 
have not been redeemed or sold by the state and a period offive years has elapsed from the date of sale to the state" (emphasis added). In other words, if the State has not sold the land for the "full price" between the end of the three-year period and the end of the five-year period, then it may sell it for the "best price obtainable, irrespective of the amount oftaxes due". § 40-10-134. (Emphasis added).
Section 40-10-135 details the rights of a purchaser at both a "full price" sale as authorized in § 40-10-132 and a "best price" sale as authorized by § 40-10-134. In fact, both §§40-10-132 and 40-10-134 are specifically mentioned in §40-10-135:
 "When lands have been sold by the state, as provided in sections 40-10-132 and 40-10-134, and the purchase money has been paid, the land commissioner, in behalf of the state, shall execute to the purchaser a deed, duly acknowledged, without warranty or covenant of any kind on the part of the state, express or implied, conveying to him all the right, title and interest of the state in and to the lands purchased by him; and such purchaser shall thereafter have all the right, title and interest of the state in and to such lands and shall be held and treated as the assignee of all the taxes due upon such lands, or for which they were sold, and the penalties and all of the taxes that should have been under the law assessed upon the same, if they had been the property of a private citizen of the state, and he shall be clothed with all the rights, liens, powers and remedies, whether as a plaintiff or defendant, respecting said lands as an individual purchaser at the tax collector's sale would have in similar circumstances; and all such liens and charges as the state had before such sale by the land commissioner shall be enforced in favor of such purchaser from him, as under the provisions of law relating to individual purchasers at sales by the tax collector, such purchaser, on failure of his title, shall have his lien and charges assessed by the court or by a jury and may foreclose the same by proceeding at law in such suit. (Acts 1935, No. 194, p. 256; Code 1940, T. 51, § 318.)" (Emphasis added.)
The majority places great emphasis in the portion of the statute I have emphasized. I shall show why the majority incorrectly does so,
 II
The former owners contend that the governing case law provides that a tax sale purchaser who has not paid to the State a sum at least equal to the taxes that would have accrued against the property had it been privately owned is not entitled to collect those taxes from the former owner upon redemption.
They also contend that the deed given to the defendants' predecessor in title shows that the consideration was $86.75, and that this Court has consistently held that a tax purchaser acquires a lien for the repayment to him only of the sums specified in the statutes by one who has a right to redeem. At issue is whether the tax purchaser, not having paid the State any sum to represent the taxes that would have accrued after the State acquired title, can require the former owner to pay that amount before he can redeem.
The former owners cite this Court's case of Chastang v. Moog,230 Ala. 452, 161 So. 502 (1935), as authority for the proposition that a tax sale purchaser is not entitled to collect interim taxes from a redeeming former owner if the tax purchaser has not paid those taxes himself. Factually, Chastang
is strikingly similar to this case and upon first examination would appear controlling. There, the tax collector sold the plaintiff's land in 1921 for unpaid 1920 ad valorem taxes. There was no purchaser at the tax collector's sale and the State bid in the property for the amount of the unpaid taxes plus costs. In 1926, the State sold the land to the defendant's predecessor in title. The purchase price did not include the taxes that would have been assessed against the property from 1921 through 1924 had it been privately owned during that time. When the plaintiffs filed a bill to quiet title and to redeem from the tax *Page 183 
sale, the defendant contended that she was entitled to collect those interim taxes, based upon the provisions of § 3123 of the 1923 Code of Alabama (now § 40-10-135, the statute that the tax purchaser relies on here, but with one very importantdifference — § 3123 of the 1923 Code did not contain areference to the "best sale" statute [§ 3122 of the 1923 Code, now § 40-10-134], as § 40-10-135 does; apparently, the compilers of the 1923 Code did not bring forward in the Code section the original language of Act No. 328, passed in 1919, as I will show later in this opinion).
In Chastang, this Court did hold, in part, as follows:
 "The taxes on the land for the years 1921 to 1926 were not included in the purchase price, and the deed does not purport to vest in the purchaser from the State the right to demand the payment of taxes for said years by said purchaser or those claiming under her.
 "There is no contention that the appellee, or those under whom she claims, had paid taxes on said property for the years 1921 to 1926, and therefore the case presented is not within the influence of Section 3123 of the Code [now § 40-10-135], but is governed by the provisions of Section 3096 [now § 40-10-70, Code of Alabama
(1975)], under which appellee is entitled to the taxes, fees, and costs for which the property was sold and paid to the State in the purchase by [appellee's predecessor], with the penalty provided by law, and the taxes subsequently paid by such purchaser and those claiming under said purchaser, with interest."
230 Ala. at 457, 161 So. at 506.
Chastang must be considered against the backdrop of the history of §§ 40-10-83, 40-10-134 and 40-10-135. Both §§40-10-83 and 40-10-134 first appeared in the 1907 Code, as §§ 2312 and 2338, respectively. Sections 40-10-132 and 40-10-135
appeared in the Alabama Code as early as 1897, and appeared in the 1907 Code as Sections 2323 and 2325, respectively.
It was not until the passage of Act No. 328 by the Alabama Legislature in 1919, that "best price" purchasers were granted all the right, title, and interest of the State, including the right to receive a full redemption from the former owner. However, when the Code of 1923 was compiled, "best price" purchasers, under § 3122 of that Code, were not included in the coverage of § 3123 (the 1923 Code version of present §40-10-135). In other words, the benefit the Legislature had given to "best price" purchasers in 1919 by Act No. 328 was taken away by the 1923 Code.
The tax purchaser here contends that the failure of the compilers of the 1923 Code to include the benefit to "best price" purchasers was a " 'historical' oversight of the first magnitude, committed by the compilers of the 1923Code," and that the Legislature was quick to correct the error once it was discovered. On July 10, 1935, less than two months
after the Chastang decision, the Legislature — probably aware of that decision — passed Act. No. 194, which amended § 3123 of the 1923 Code to extend its full coverage and benefits toboth "full price" purchasers (present § 40-10-132) and "bestprice" purchasers (present § 40-10-134).
It is apparent that this Court, in Chastang, had to decide the issue presented there based on the law as it was stated inthe 1923 Code, which was the applicable law in effect at the time the tax purchaser acquired her deed, and not based on the 1919 Act. Consequently, Chastang, although legally correct, is limited by its facts, and I do not believe that Chastang
controls our interpretation of the law now applicable to the facts in this case.
 III
The state land commissioner, in his amicus brief, strongly urges this Court to reverse the judgment of the trial court and argues that the record shows that the "bulk sales" policy has resulted in successively increasing yields since it was initiated, and that the department of revenue "has determined that the bulk sale of lands results in more net revenue for the state than the state would receive in trying to gain possession of the lands and attempting *Page 184 
to perfect its title, after allowing for the estimated expense of court costs, attorney fees, and additional administrative expenses."
Our decision cannot, of course, be based upon whether a particular policy is beneficial to the State or not, but must be based on what the Legislature, within the bounds of constitutional constraints, has actually authorized. By adopting § 40-10-134, the Legislature has authorized the land commissioner to sell certain lands for the "best price obtainable," and this record indicates that the land commissioner has determined that he can get the "best price" by selling parcels located in one county by using the "bulk sale" method. I believe he could do that constitutionally. The majority thinks otherwise.
 IV
It is apparent that the Legislature has provided a procedure whereby land can be sold to pay the taxes due on the land, but adequate notice is required before such a sale can occur. As this record shows, at least 317 such sales occurred in Mobile County at which no purchaser entered a sufficient bid, and the 317 parcels were bought in by the State. At no time during the 5-year period set out in § 40-10-134 did any of the 317 former owners exercise their right to redeem from the State, as they were authorized to do.
The statutory scheme set up by the Legislature, under the facts of this case, allows the state land commissioner to sell the land for the "best price obtainable, irrespective of the amount of taxes due." According to the evidence in the record, one of the avowed purposes of the "bulk sale" policy was to carry out the legislative scheme of getting the land back on the tax rolls, either by sale or redemption. There is no suggestion in this record that the total price received by the State was not the "best price obtainable." The only argument centers around the assessed taxes, which I do not believe are the "obligation or liability of any person" under current law. The "bulk sales" were publicly advertised, and anyone, including the former owners, I must assume, could have entered a bid.
In any event, the following facts are uncontroverted: 1) the former owners failed to pay the ad valorem taxes on the property, 2) it was advertised for sale, and no purchaser having bid a sum to pay the taxes, fees, costs and expenses, it was bid in for the State, 3) while the State held the title for more than five years, no one, including the former owners, offered to buy or redeem the property for the "full price," 4) the land was included in a "bulk sale," along with 31 other parcels, and the tax purchaser, appellants' predecessor, bid the highest price, and was given a deed.
The Legislature has determined that, when land has been bought in by the State, and has been held for five years, and the state is not collecting any taxes on it, then the state land commissioner can sell the land for the "best price obtainable, irrespective of the amount of taxes due." The purpose is to get the land back on the tax rolls. Even redemption is a statutory right designed, in part, to get land back on the active tax rolls.
I can find no reason why the Legislature is prohibited from allowing the State, as the owner of the property, to sell it and fix the price, and impose such conditions on the sale as the State deems fit and proper. If the Legislature, in fostering the State's interest in returning unproductive property to its tax rolls, wants to grant to a purchaser the rights set out in § 40-10-135, I can find no constitutional provision that would limit the Legislature's power in that regard. Cf. State ex rel. Violet Trapping Co. v. Grace,182 La. 405, 162 So. 26 (1935), aff'd, 297 U.S. 119, 56 S.Ct. 386,80 L.Ed. 518 (1936).
If the law did not require that redemption take into account the taxes that would have been imposed had the property not been deeded to the State, owners might find it advantageous to allow their property to be deeded to the State with the intention of delaying redemption as long as possible to escape the taxes that attend ownership. The trial judge apparently recognized the inequity of allowing the former owners to *Page 185 
redeem without paying the taxes that would have accrued had the State not held legal title. He ordered that the former owners would have to pay all interim taxes to the State as a prerequisite to redemption. He cited no authority in support of his order. I cannot find any legislative authorization for the order, and the State does not seek to sustain it, even though it would mean that the State would receive the amount ordered to be paid. The majority treats the issue this way:
 "Whether the State can now collect from the redemptioners the unassessed taxes for the period between its purchase at the tax sale and the bulk sale more than five years later to the 'best price' purchasers under § 40-10-135, is another matter. In the present case, the matter appears to be a nonissue, because the State is not seeking to collect these unassessed taxes. However, if they are at all collectible, they are collectible only by the appropriate taxing authority, not by a private individual, unless that individual is obligated, upon collecting them, to remit the taxes to the taxing authority."
The State is of the opinion that when it received the "best price obtainable, irrespective of the amount of the taxes due," any obligation to the State had been extinguished. I am, too. In fact, the State supports the position taken by the appellants on this appeal.
Although the right of redemption is liberally granted, it is, nevertheless, a gratuity, and may be restricted in the discretion of the Legislature. Hill v. Di Beneditto, 253 Ala. 229, 43 So.2d 819 (1950).
Construing the statutes in pari materia, I am of the opinion that the Legislature, by adopting the various statutes, intended to accomplish at least these general objectives: 1) to give a former owner a liberal right to redeem, 2) to establish the price that the former owner would be required to pay in order to redeem, 3) to prevent "tax avoidance" by landowners, and 4) to foster a return of land to the active tax rolls. I believe that the decision in this case frustrates these objectives, and could foster tax avoidance.
Other jurisdictions deciding cases involving factual settings similar to the one presented here have recognized the State's interest in returning tax-delinquent property to the tax rolls as one of the paramount considerations, and the record here shows that this was one of the considerations that prompted the State to adopt the "bulk sale" policy. Typical of those cases is Sutter-Yuba Inv. Co. v. Waste, 21 Cal.2d 781,785, 136 P.2d 11, 14 (1943), in which the court wrote:
 "In the interest of returning tax delinquent property to the tax rolls, the State has enacted liberal provisions for the redemption of such property, so designed as to discourage tax avoidance. If they did not require that redemption take into account the taxes that would be imposed had the property not been deeded to the state, owners would find it advantageous to allow their property to be deeded to the state with the intention of delaying redemption as long as possible to escape the taxes that attend ownership, secure in the knowledge that the state must give them notice before disposing of the property. [Citation omitted.] The right of redemption until the disposal of the property by the state serves the taxpayer's convenience but does not enable him to escape taxes for the period intervening between the deed to the state and redemption while others pay their taxes conscientiously year by year.
Likewise he cannot escape such taxes by allowing his property to be deeded to any other taxing unit such as a reclamation district and subsequently regaining the title free of intervening taxes." (Emphasis added.)
Sutter-Yuba Inv. Co. v. Waste, 21 Cal.2d at 785, 136 P.2d at 14
(1943).
 V
After considering the various statutes and the cases that interpret those statutes, and construing the statutes in parimateria, I am of the opinion that two central themes are always present: First, the statutes, and this Court's interpretation of them, extend to former owners whose land *Page 186 
has been sold for non-payment of taxes, very broad and expanded redemption rights; second, the redemption price is fixed at an amount that represents the amount of taxes, interest, and penalties the former owner has failed to pay,plus all taxes that would have accrued during the time thetitle was held by the State and no taxes were due or payable;
third, tax titles may be acquired by two methods: a) by purchase at the tax sale conducted by the tax collector, or b) by subsequent purchase from the State, as is the case here.
The rights of purchasers at a tax collector's sale, including the State, are generally set forth in §§ 40-10-70
through 40-10-83. After the property has been bid in and the title is held by the State, as provided for by law, and the State sells that property as authorized by § 40-10-134, then §§40-10-129 through 40-10-140 control. Section 40-10-135
specifically controls the price that a former owner must pay to the purchaser from the State in order to redeem the property. This is the redemption price that the State has set, which the law says a former owner must pay in order to redeem; therefore, the decision of the trial court that § 40-10-83 was applicable and that principles of equity governed and required that a portion of the redemption price be paid to the State, is obviously erroneous.
The statutory scheme, which requires a former owner to pay all taxes due on the land, plus penalties and "the taxes which should have been under the law assessed upon the [property], if they had been the property of a private citizen," is not inconsistent with holdings made by this Court when this Court was construing the predecessor to § 40-10-83 — that was Title 51, Section 296, Code of Alabama 1940, the Code section relied upon by the trial court. In Standard Contractor Supply Co. v.Scotch, 247 Ala. 517, 25 So.2d 257 (1946), this Court recognized that a delinquent taxpayer cannot escape the payment of the taxes due and accrued:
 "His [the landowner's] right to redeem under section 296, Title 51, Code, assumes that the title passed out of complainant by the tax sale, and he is trying to restablish [sic] it, dependent upon his possession, not necessarily peaceable possession. His right is not affected by his failure to pay the taxes while the title was in the State under the tax sale. If he can redeem at all, it is on the condition that such taxes be paid."
247 Ala. at 520, 25 So.2d at 259 (emphasis added).
Likewise, in Quinn v. Hannon, 262 Ala. 630, 634,80 So.2d 239, 242 (1955), this Court again construed the predecessor statute to § 40-10-83, and held as follows:
 "The effect of these sections is to place the purchaser in the shoes of the state, so to speak, giving to the purchaser whatever rights the state might have had if the sale had not been made. If the redemption here were from the state the amount to be paid would be the amount of money for which the lands were sold at the tax sale, with the statutory interest thereon from the date of the sale, there being no subsequent taxes due on the land."
It is apparent that this Court has not found the statutory scheme of putting a tax sale purchaser in the shoes of the State to be constitutionally infirm.
I now address the plaintiffs' contention that § 40-10-135
assigns to the defendants the right to "collect taxes" owed on the land, and that the statute thereby violates the provisions of Art. IV, § 100, of the Alabama Constitution. The parties have not cited, and my research has not revealed, an Alabama case on this point.
Of course, the Legislature is presumed to have acted constitutionally; therefore, "When an act is susceptible of two constructions, one of which would render it offensive to the Constitution and the other would not, the construction most favorable to the Constitution should be given though the less natural one." Centennial Associates, Ltd. v. Clark,384 So.2d 616, 618 (Ala. 1980).
I do not think that § 40-10-135 violates Art. IV, § 100, of the Constitution. Although I agree that the Constitution clearly prohibits the State from exchanging, transferring, or extinguishing obligations *Page 187 
due it, with certain exceptions, such an exchange or extinguishment is not contemplated by § 40-10-135. The statute merely provides a method of calculating the price that a former owner must pay to redeem land after it has been bid in by the State, and then sold to a third party. The statute, in pertinent part, states:
 "When lands have been sold by the state as provided in § 40-10-134 the land commissioner shall execute to the purchaser a deed . . . conveying to him all the right of the state in the lands . . ., and such purchaser shall thereafter have all the right . . . of the state . . . to all of the penalties and all of the taxes that should have been under the law assessed." (Emphasis added.)
No transfer or exchange of obligation occurs under the statute. The Legislature could have provided any number of ways of calculating the price a landowner would have to pay to redeem land sold for nonpayment of taxes. I would hold that the Legislature chose to provide that the redemption price was to be calculated, in part, with reference to the taxes that should have been assessed while the property was in the State's possession. Because the defendants in this case have not been assigned a tax obligation owed to the State, I find no constitutional problem. The redemption price, as properly calculated, would include the taxes that should have been assessed during the time the land was owned by the State, but the obligation of the former owners has been extinguished.
Of course, it would violate Art. VI, § 100, of the Constitution to assign the right to collect taxes actuallyassessed or to extinguish a liability for taxes actually assessed, but no taxes were assessed on this land while it was owned by the State. § 40-10-20. No taxes having been assessed on the land while it was in the State's possession, no argument can be made that a right to these taxes has been transferred. Likewise, the statute does not extinguish any obligations under this statute. The Constitution prevents the State from extinguishing an obligation except by payment of that obligation's face value, but where no taxes have been assessed, no obligation has been created.
The Legislature, in the interest of promoting the return of tax delinquent property to the tax rolls, has admittedly enacted liberal provisions for the redemption of that property, but it has also designed a scheme to discouragetax avoidance. Before the State can sell property under the "best price" statute, it must have held it for five years, during which time the State has not received any revenue, because "[l]ands bid in by the state shall not thereafter be assessed except as herein provided until the same have been redeemed or sold by the state." § 40-10-20. (Emphasis added.)
Because this case involves real estate that was sold for taxes and purchased by the State, I believe that the provisions of Title 40, Article 5, §§ 40-10-120 through40-10-143, apply, and that the Legislature acted constitutionally when it provided the amount that a tax purchaser could require a redemptioner to pay.
Based on the foregoing, I would reverse the judgment of the trial court.
TORBERT, C.J., and JONES and STEAGALL, JJ., concur.